WOODWORTH v. CHEEVER. See Case No. 18,019.

## Case No. 18,011.

### WOODWORTH et al. v. COOK.

[2 Blatchf. 151;[1] 1 Fish. Pat. Rep. 423.]

Circuit Court, N. D. New York.   Nov. 21, 1850.

PATENT FOR PLANING MACHINE—CONSTRUCTION OF LICENSE — RESTRICTIONS AS TO SALE — MISTAKE IN CONTRACT — DEFENSES — SUIT FOR SPECIFIC PERFORMANCE.

1. A license given by W., the patentee, to C., to use six patented planing machines, recited that C. desired a license to use the machines in a certain county "on the conditions hereinafter mentioned," and then granted to C. permission to use the six machines within the county, "and also, within said limits, to dispose of the plank or other things dressed and prepared on the said machines:" it further provided that W. should not permit any other person than C. to use the machines within the county, and that C. should not use more than six machines there, "nor use any such machines, nor sell and dispose of any plank or other thing dressed and prepared in such machines, any where else within the United States;" and it concluded thus: "It is understood that said C. has all the rights I (W.) have in said county, under said patent, to use six machines, and no more:" Held, that the sale of the products of the machines was restricted within the county, and that there was nothing in the prior clauses of the license necessarily repugnant to the last one.

2. But, where it appeared that the actual agreement between W. and C. at the time was, that C. was not to be restricted as to place in selling the dressed plank, and that the last clause in the license was especially inserted for that purpose, a court of equity would, probably, on a proper application, direct the contract to be reformed by the insertion of a clause to the effect claimed.

3. If so, it seems to be an established rule in equity, that the matter entitling the party to an amendment of his contract may be set up by way of defence to a proceeding to enforce a specific performance of the contract, where the clause omitted through mistake or accident would, if found in the instrument, constitute a ground of defence.

[Cited in Steam Cutter Co. v. Sheldon, Case No. 13,331.]

4. But such a defence cannot be set up where the rights of a bona fide purchaser have intervened, which would or might be seriously prejudiced by giving effect to the defence.

[Cited in Cohn v. National Rubber Co., Case No. 2,968.]

5. Under the license in this case, W., on a breach by C. of the condition as to the sale of the products of the machines, had a right to avoid the contract, and to be remitted to his original rights, and to prosecute C. for an infringement of the patent.

6. But C. also is remitted to his original position and rights; for the contract must be avoided altogether, if at all.

[Cited in brief in Union Manuf'g Co. v. Lounsbury, 41 N. Y. 367.]

7. And C. may set up any right he had prior to the license, to use the machines; as, for instance, where the right granted by the license was for an extension of the patent under section 18 of the patent act of July 4, 1836 [5 Stat. 124], he may set up a right, under the decision in Wilson v. Rousseau, 4 How. [45 U. S.] 646, to use the machines as having been in use when the first term of the patent expired.

8. In a suit in equity against C., to take advantage of a breach of said condition of the license, W. is properly joined as a plaintiff with G., although the latter owns the whole of the beneficial interest in the subject-matter; because W. was a party to the license, and, for aught that appears, is yet the owner of a portion of the interest in the patent, and, as such, interested in upholding it, and may be interested indirectly in the infringement itself.

[Cited in Whiting v. Graves, Case No. 17,577.]

The bill in this case was filed in June, 1847, and set forth the granting of the Woodworth patent, its extension for seven years from the 27th of December, 1842, and its re-issue on the 8th of July, 1845. See Wilson v. Rousseau, 4 How. [45 U. S.] 646. It also set forth that, on the 25th of November, 1845, the plaintiff [William W.] Woodworth, the patentee of the re-issued patent, conveyed to the plaintiff Gibson the exclusive right to the patent during the extension, for the city and county of Albany, N. Y., except the right to use two machines in Watervliet in that county; that on the same day, James G. Wilson, who, on the 9th of July, 1845, had become the assignee of the right under Woodworth for the territory specified in the conveyance next mentioned, conveyed to the plaintiff [John] Gibson all the right to the patent, during the extension, for the state of New York, excepting the exclusive right to run seven machines, in six specified places (none of them, however, in the county of Washington, N. Y.), in addition to the two machines in Watervliet, before excepted; that the defendant had had in operation for some time three Woodworth machines at Whitehall, Washington county, N. Y., and dressed large quantities of lumber with them, and sold it in Albany and Troy, and had had and still had depositaries in those cities and elsewhere, for the sale of such dressed lumber; that the plaintiff Gibson had a large and expensive establishment at

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

30 Fed.Cas.—36

Albany for running and making the Woodworth machines and selling them and the lumber dressed by them, and his licensees had large establishments of the same kind at Troy and other places in the state of New York, the whole being of the value of not less than $200,000; that the operations of these establishments had been materially injured by the defendant's acts, and that the defendant claimed the right to do as he had done, under a license from the plaintiff Woodworth, given on the 4th of July, 1843.

The license, which was set forth in the bill and was under seal, was executed by both Woodworth and the defendant, recited that the defendant desired a license to construct and use the Woodworth machines in the county of Washington, "on the conditions hereinafter mentioned," and then gave the defendant permission to construct and use six of the planing machines in the county of Washington, N. Y., and not elsewhere, during the extension, "and also, within said limits, to dispose of the plank or other things dressed and prepared in the said machines." The license then provided that Woodworth should not permit any other person than the defendant to construct or use the machine within the county of Washington, and further, that the defendant "shall not, nor will, during the term aforesaid, construct or use more than six machines as aforesaid within the limits above mentioned, nor construct or use any such machines, nor sell and dispose of any plank or other thing dressed and prepared in such machines, anywhere else within the United States and the territories thereof." The license concluded as follows: "It is understood that said Cook has all the rights I have, in the county of Washington, under said patent, to use six machines, and no more."

The bill claimed that the defendant [William W. Cook]. by vending the products of his machines out of the county of Washington, had violated the conditions and covenants of his license and forfeited all his rights under it. The bill further set forth that, on the 20th of August, 1846, the plaintiff Woodworth, by an instrument in writing, authorized and empowered the plaintiff Gibson, in the name of Woodworth or otherwise, to prosecute the defendant for the violation of the covenant and condition in the said license contained, and to recover from him such damages as he was liable to pay therefor, and to restrain him from further violating his covenant, and to receive to his own use all damages that might be recovered. The bill prayed for an account of profits, and an injunction against the further use of the machines, and that the license might be annulled. The answer admitted the running of three Woodworth machines by the defendant at Whitehall, and the sale by him, out of the county of Washington, of the lumber dressed by them. It insisted that the plaintiff Gibson could not have been injured by the defendant's operations, unless the lumber dressed by the defendant would otherwise have gone to the machines of Gibson to be dressed; that the defendant had a right to sell his dressed lumber wherever he thought proper; that, in March, 1838, he and his brother acquired a right, through several mesne conveyances, by deed from William Woodworth, to use two of the Woodworth planing machines in Washington county, for the residue of the original fourteen years, and that they at the same time bought two of the machines and put them in use at Whitehall, and had used them there ever since; that, at the time the license of the 4th of July, 1843, was executed, it was actually agreed between the plaintiff Woodworth and the defendant, that the latter should possess the right to vend the products of the six machines without any restriction as to place, and the parties intended that the license should so provide, and understood that it did, and the last clause in it was inserted to effect that object; that the defendant had a right, at all events, to use the two machines so purchased by him and his brother, and to sell anywhere the lumber dressed by them; that the restriction insisted on by the plaintiffs was in restraint of trade, and void; that the patent did not grant to the patentee the exclusive right of selling the products of the machines, and he had no right to restrict their sale; that this court had no jurisdiction of the case; that the bill did not show any joint interest of the plaintiffs in the relief prayed for; and that they had a perfect remedy at law. There was a replication to the answer, and the case was heard on pleadings and proofs. The material parts of the evidence are stated in the opinion of the court.

Azor Taber and Rodman L. Joice, for plaintiffs.

I. The objections to the bill, as set forth in the answer, are untenable. (1) This court has exclusive jurisdiction of the subject-matter of the bill. The objection taken is that, if the bill is founded on the forfeiture or the breach of any covenant, this court has no jurisdiction. The answer is, that we are to consider the covenant as broken and set aside, and the bill as a bill for infringement, founded on the patent. Of a bill complaining of the unauthorized use of a patent right, and praying an account and injunction, a state court has no jurisdiction, even by consent. Act July 4, 1836, § 17 (5 Stat. 124); Dudley v. Mayhew, 3 Comst. [3 N. Y.] 9. (2) Woodworth. the patentee, is properly joined as plaintiff with Gibson, his assignee for the territory where the injury is alleged to have been done: the lumber dressed by the defendant's machines having, contrary to the license from Woodworth. been sold in Gibson's territory. Act July 4, 1836, § 14;

Whittemore v. Cutter [Case No. 17,600]; Woodworth v. Wilson, 4 How. [45 U. S.] 712, 716. (3) The plaintiffs have not an adequate remedy at law. They pray that the defendant's license be declared void, and for an account and an injunction; for all of which they have a manifest right to come into a court of equity.

II. The planing of lumber in Whitehall, for sale elsewhere, was contrary to the terms and true meaning of the license. The last sentence of the instrument does not contradict the prior explicit restriction as to disposing of the dressed lumber. Whatever was authorized to be done by the last sentence, was to be done "in the county of Washington." It expressly relates to using the machines, and was inserted for abundant caution, to show that Woodworth reserved no rights to himself in the county. To allow such a general expression to overrule an explicit condition not mentioned or referred to in it, would violate the fundamental rules of construction. Co. Litt. 147a; Story, Cont. (2d Ed.) § 639.

III. The allegation in the answer, that the parties intended by the contract something different from what is expressed in it, is nugatory, and the oral evidence given in its support should be rejected. (1) Parol evidence is inadmissible to add to, defeat or vary the terms of a written instrument, especially where, as in the present case, an instrument in writing is required by law to give effect to the contract. Act July 4, 1836, § 11; 3 Starkie, Ev. pt. 4, pp. 100–102; 1 Phil. Ev. (C. & H. Ed.) 559; Rich v. Jackson, 4 Brown, Ch. 514; Sherman v. Mayor, etc., of New York, 1 Comst. [1 N. Y.] 316; Norton v. Woodruff, 2 Comst. [2 N. Y.] 153. (2) The construction of a written contract, or the presumption arising from it, can no more be varied by parol evidence, than can its terms. Creery v. Holly, 14 Wend. 26, 30; Hull v. Adams, 1 Hill. 601. (3) There is no pretence of any latent ambiguity in the instrument. If there be any ambiguity, it is patent, and cannot be explained by oral evidence. Story, Cont. (2d Ed.) § 677. (4) If there was any mistake or fraud in the license, Cook should have filed his bill against Woodworth, to be relieved from his contract, or to reform it according to the intention of the parties. He cannot be permitted to claim under it as it is, and then, when sued for its violation, alter some of its provisions by parol evidence. (5) Especially can he not be permitted to do this against Gibson, an innocent third person, who, on the faith of the records of the patent office, has for years conducted his business under the patent, and has incurred the expense of this prosecution.

IV. The license was, by its terms, granted on certain conditions, one of which has been violated by Cook. The violation of this condition was a forfeiture of the license. Story, Cont. §§ 28, 29; Com. Dig. "Condition," B. C.

Samuel Stevens, for defendant.

I. The defendant had a right to use, without restriction, the two machines bought by him in 1838; and the plaintiffs can, in any event, reach only the third machine.

II. The license does not restrict the defendant as to the place of selling the lumber dressed in the machines. And, even if it does, it is not a condition on which his title depends, but merely a covenant, for a breach of which the parties injured must obtain relief by damages. Courts will not create a condition by construction, when the consequence is to be a forfeiture; but will sometimes construe a condition to be a covenant, in order to avoid a forfeiture.

III. But, if the license does restrict the place of sale, the proofs show that there was a mistake in the contract, and that the agreement was, there should be no restriction.

IV. The court will, therefore, in a suit in equity, give such a construction to the license as the parties intended it to receive; especially will they do so where a different decision will work a forfeiture. Hunt v. Rousmaniere, 8 Wheat. [21 U. S.] 174.

V. The bill is defective for the reasons set forth in the answer.

NELSON, Circuit Justice. 1. The evidence is very strong in this case to show that, according to the actual agreement between the patentee and the defendant at the time of the assignment of the 4th of July, 1843, the latter was to possess the right not only to construct and use the six machines within the territory mentioned, but also to vend their products, without any restriction as to place. The deposition of Mr. Boyd is very particular and explicit on this point. It was the subject of discussion in the negotiation, and was deemed a very material part of the contract on the part of the defendant; so much so, that he refused to become the purchaser if restricted in the exercise of this right, as provided for in one of the clauses in the assignment. To remove the objection and give the unrestricted right of sale, the last clause was interlined at the bottom of the instrument, as follows: "It is understood that said Cook has all the rights I have in the county of Washington, under the said patent, to use six machines, and no more."

Upon this evidence, assuming that the clause thus inserted has not the effect, when taken in connection with other parts of the contract, to give the unrestricted right of sale, according to any legal interpretation of the instrument, a court of equity would probably, on a proper application, direct the contract to be reformed, by the insertion of a clause to the effect claimed; and, if so, it seems to be an established rule in equity, that the matter thus entitling the party to an amendment of his contract may be set up by

way of equitable defence against a proceeding involving the rights of the parties under the instrument, and which would not be maintainable if the clause in question had formed a part of the contract. In other words, it may be set up by way of defence to a proceeding to enforce a specific performance of the contract, where the clause omitted through mistake or accident would, if found in the instrument, constitute a ground of defence. Com. Dig. "Chancery," 2, C, 16; Joynes v. Statham, 3 Atk. 388; Pitcairn v. Ogbourne, 2 Ves. Sr. 375; Legal v. Miller, Id. 299; Mason v. Armitage, 13 Ves. 25; Flood v. Finlay, 2 Ball & B. 15; Gillespie v. Moon, 2 Johns. Ch. 585; Price v. Dyer, 17 Ves. 357; 1 Story, Eq. Jur. § 161.

I am inclined to think, notwithstanding the insertion of the last clause in the agreement, that, taking the whole instrument together, and giving to each and all of its provisions a consistent interpretation, the sale of the products of the machines was restricted within the limits of the county within which their operation was confined; and that there is nothing in the restrictive clause necessarily repugnant to the one relied on by the defendant as qualifying it. It is not to be denied, however, that unless the view taken by the defendant as to the effect of the qualifying clause is the correct one, it is difficult to perceive its object or materiality, as that clause, if confined simply to the number of machines to be used, would be but a repetition of what had already been fully provided for. The defendant's view, therefore, though not sustainable upon any proper legal interpretation of the instrument, tends to confirm the evidence as to the mistake or misapprehension of the effects of it, claimed in the answer.

Upon the whole, I should be disposed to acquiesce in the ground and principle of the defence thus set up, were it not for the consideration that the rights of a bona fide purchaser have intervened, which would or might be seriously prejudiced by allowing the contract to be reformed at this late day, or by giving effect to the defence, which would be the same thing. Wilson and Gibson having purchased all the right of the patentee within the state of New York, subject to certain previous grants, and, among others, the one in question, and paid for the same a valuable consideration, the enlargement of the defendant's contract beyond what appeared upon the face of it, to the prejudice of these subsequently acquired rights, would be unjust and inequitable, and constitutes ground that must prevent the interference of the court. In the aspect of the case in which the relief is prayed for against the terms of a written instrument, these assignees are to be regarded as bona fide purchasers, and as presenting at least an equal equity against the correction of the mistake, to their prejudice, with that presented by the defendant in favor of it. The authorities on this point were re-

ferred to in the case of Gibson v. Cook [Case No. 5,393].

That the unrestricted sale of the products of the machines operated in the territory in question would not be prejudicial to the rights of these assignees, is a proposition I cannot assume or admit. It is manifest that a right to vend the products in the markets at the cities below on the Hudson river, would seriously affect the value of the machines in operation in those cities, and, of course, the price of the rights under the patent. If so, then the rights of the assignees, as bona fide purchasers, intervene, and, upon the principles above stated, forbid the interference of the court.

2. I am inclined to think that the assignment from Woodworth to Cook, according to the fair import of its terms, was made upon the express condition that he should observe strictly the limitation in regard to the sales of the products of the machines; and that, on a breach of the condition, the patentee had a right to avoid the contract and to be remitted to his original rights. This would seem to be not only the intention of the parties in inserting the condition, but also the legal effect and operation of the stipulation; and upon this view the bill has been framed.

It is to be observed, however, that the defendant is also remitted to his original position and rights under the Woodworth patent, as the contract must be avoided altogether, if at all. It cannot be obligatory upon the one party and not upon the other. The bill assumes, and properly, as its foundation, that the contract has been rendered null and inoperative by the breach of the condition; and that, since the breach, the defendant has been running the machines in violation of the patent. In this view of the case, he may well set up, as he has done in the answer, any right belonging to him, as it respects the use of the said machines, prior to the assignment in question.

It seems that two of these machines were constructed and used under a right acquired from the original patentee during the first term, and were in use at the expiration of that term. According, therefore, to the case of Wilson v. Rousseau, 4 How. [45 U. S.] 646, the defendant had a right to continue in the use of them, notwithstanding the first extension. This ground affords a complete answer to the charge of infringement as it respects these two machines.

3. Woodworth, the patentee, is, we think, properly joined with Gibson as a plaintiff. He being a party to the assignment, it was, perhaps, necessary to make him a party to the suit, in order to take advantage of the breach of the condition, notwithstanding the whole of the beneficial interest is in Gibson. Besides, for aught that appears, he is yet the owner of a portion of the interest in the patent, and, as such, interested in upholding it; and he may be interested indirectly in the infringement itself.

There must be a decree for the plaintiffs, and a reference to a master to take proof of the loss of profits sustained on account of the infringement, upon the principles above stated.

[For other cases involving this patent, see note to Bicknell v. Todd, Case No. 1,389.]