## The Hubbardston Lumber Company v. Philo T. Bates and others.

*Finding of facts : When conclusive : Facts found but not supported by any evidence.* The finding of facts on a trial by the court without a jury is conclusive as to any fact therein stated, provided there was any evidence tending to sustain it; but where the evidence is all given in the record, and exception taken and error assigned for lack of evidence to support particular findings, if there be none to sustain any such particular finding, or any material part thereof, then the finding thus far is not binding and must be held erroneous.

*Rescission of contracts: Delay : Payments : Excuse : False representations of facts.* In an action to recover back the consideration paid on an agreement to purchase logs to be delivered afloat at a place specified, on the basis of a rescission of the contract for failure to deliver as agreed, delay in rescinding and payments afterwards made may be sufficiently excused by a finding supported by evidence, that they were made in reliance upon assurances that the logs were all, or nearly all, afloat ready for delivery.

*Rescission of contracts: Letter : Extension of time : Delay : Waiver.* A letter written by one of plaintiffs' firm to the defendant asking leniency and an extension of time for payment of the balance due upon a note given for a part of the pur

chase price, would be a waiver of any right of rescission of the agreement to purchase, based upon any previous delay of the defendant of which the plaintiffs then had knowledge.

*Finding of facts : Rescission of contract : Delay : Acquiescence : Notice : Partnership : Agency.* The evidence in this case fails to support the finding that such a letter, which was proved to have been written, was written in reliance upon assurances that the logs were afloat, and shows clearly that before it was written, one at least of the plaintiffs' firm knew that they were not afloat; and upon the question of acquiescence and undue delay in exercising the right to rescind, the firm must be conclusively held to have notice of every fact or thing material to the question which any member of the firm knew; and any act of any member, or any letter written by one in their name, with reference to any of this business, must be treated as the act or letter of the firm.

*Rescission of contracts : Reasonable time : Delay.* If the plaintiffs could have rescinded at all, they could only do so within a reasonable time; and in the absence of any evidence excusing it, a delay and acquiescence with full knowledge of the facts, of between four and five months, is longer than could reasonably be required to exercise the right of rescission.

*Rescission of contract : Demand of damages for breach : Affirmance.* The letter which was relied upon in this case as a rescission of the contract is not a clear and definite notice of rescission, but is rather an assertion of a breach and of such delay as would justify a refusal to accept the logs by reason of the breach, and a claim of damages, instead of a return of the consideration; and, therefore, to that extent as much of a confirmation as a rescission of the contract.

*Contracts : Rescission in part : Damages for breach.* A party cannot rescind a contract in part and hold it valid or insist upon it in part, or treat it as valid for one purpose and void for another; he cannot rescind and then insist on damages for not performing, for when a contract is rescinded an action will not lie for the breach of it.

*Heard October 23. Decided January 19.*

Error to Ionia Circuit.

* This was an action brought in the Ionia circuit, by the defendants in error, under the name and style of Bates, Gould & Co., against the lumber company, to recover back the consideration paid on a purchase, or a contract for the purchase of logs, which the plaintiffs claimed to have rescinded on the ground that the logs had not been delivered afloat, according to the contract.

The case was tried before the court without a jury. The court made a special finding of facts and law, to which several exceptions were taken. The evidence is also set out in the bill, and exceptions are taken and errors assigned, that there was no evidence tending to prove certain of the facts stated in the finding.

---

* This statement of the case was prepared by Judge Christiancy.

The findings by the court, as amended after certain requests made by the defendant below, and as finally adopted by the court, are as follows:

"*First*, That the plaintiffs composed the firm of Bates, Gould & Co., doing business at Ionia, in said county, as manufacturers of lumber and shingles, on the 28th day of February, 1872, and for some time previous and up to the commencement and trial of this suit;

"*Second*, That the defendant is a corporation organized under an act of the legislature of the state of Michigan, entitled 'Of Mining and Manufacturing Companies,' approved February 5, 1853,—being chapter 63, Compiled Laws of 1857, and chapter 75 of Compiled Laws of 1871,—and doing business at the village of Hubbardston in said county;

"*Third*, That on the 28th day of February, 1872, the defendant sold to the plaintiffs 2,074 pine logs marked 'H, 3,' to be delivered afloat just above Vickery's shanties, in time for the spring freshet of 1872, the said logs scaling in quantity 595,145 feet, and the price agreed upon was five dollars ($5.00) per thousand feet, amounting to the sum of two thousand nine hundred and seventy-five dollars and seventy-three cents ($2,975.73), and that at the time of said sale the said plaintiffs made full payment to said defendant in cash and notes." [The evidence shows that $1,250.00 of the amount was in cash, and the balance was the plaintiffs' note at four months; the finding proceeds:] "And received a memorandum of sale of which the following is a copy:

"'HUBBARDSTON, February 28, '72.
"'BATES, GOULD & CO.,
"'Bo't of Hubbardston Lumber Company 2,074 pine logs marked 'H, 3' delivered afloat just above Vickery's shanties in time for the spring freshet of 1872, scaling 595,145 feet, at $5.00_____$2,975.73
"'Received payment by cash and note.
"'N. F. ROGERS, Treas. H. L. Co.'

"At the time such sale was made, defendant gave the plaintiffs the scale book kept by the person who scaled the logs as they were banked on the creek, in which the number of the logs was entered, the marks on the logs, and the number of feet they scaled; and there was no question between the parties on the trial as to the identity, quality and quantity of the logs;

"*Fourth,* That at said date, and for a long time prior thereto, the said N. F. Rogers was the treasurer of said defendant, and an active managing director, and duly authorized to make said sale, and execute and deliver said memorandum and receive said payment;

"*Fifth,* That said logs at the time of said sale, were upon the banks of Fish creek, just above Vickery's shanties; and that it is worth twenty-five cents per thousand to break the rolls and put said logs afloat;

"*Sixth,* That there was a freshet in Fish creek in the spring of 1872, about the first of April, or rise of water, sufficient to float those logs, and room enough to hold them afloat," [This 6th finding originally ended here, but the court was requested to amend by adding "but the spring freshet of 1872 did not permit owners of logs on Fish creek and its branches, to run their logs to market; and that the logs in question could not have been floated down the creek if they had been rolled in the stream;" this the court refused, but added to the 6th finding the following words]: "There was not much testimony as touching this point; not enough to warrant the court in finding that the logs could, or could not, have been run out;

"*Seventh,* That the defendant did not break the rollways, nor deliver, nor put said logs afloat, prior to or in time for said freshet or rise of water; nor at any time in the year 1872; nor at any time in the year 1873, prior to the notice given by the plaintiffs, hereinafter mentioned. But," [this is added by amendment] "the testimony shows that they were all put afloat in August or September, 1873."

31 MICH.—21.

[And here by further amendment is added]: "On the first day of July, 1872, plaintiffs renewed the note they gave defendant as part-payment for the logs, for sixty days; that on September 2d, 1872, they paid defendant five hundred dollars on said note; that on Nov. 12th, 1872, they again paid defendant $500.00 on said note; and that on the 10th of June, 1873, plaintiffs wrote defendant a letter of which the following is a copy; which letter refers to the balance due on the note given in part-payment for said logs:

"'IONIA, June 10, 1873.'
"'N. F. ROGERS:

"'DEAR SIR—Yours of the 9th is at hand; we should like very much to pay you the balance on that note; but money matters are very close with us; we have'nt got returns from a single car load of shingles yet, and having to pay our men has used all the means we could command. Mr. Gould or myself will be at your place the last of this week or first of next, and make some arrangement about the matter. The logs will undoubtedly be next year's stock, if they get here then.

"'Yours respectfully,

"'BATES, GOULD & Co.

"Per B.' "

[Thus far this amendment was made at the request of the defendant; but the court then adds further, of his own motion, the following]: "The testimony shows that said five-hundred-dollar payments were made by plaintiffs to the defendant, and said letter, written by plaintiffs to the defendant, upon the assurance by the defendant, through said Rogers, that the logs were all afloat, or nearly so; that the plaintiffs knew nothing to the contrary, and relied upon those assurances;

"*Eighth,* On or about the first day of July, 1873, the plaintiffs served upon the defendant a notice, of which the following is a copy, to wit:

"'IONIA, July 1, 1873.

"'*Hubbardston Lumber Company:*

"'GENTLEMEN:—On the 28th day of February, 1872, we purchased of you two thousand and seventy-four pine logs, marked "H. B.," to be delivered afloat just above Vickery's shanties, in time for the spring freshet of 1872, scaling five hundred and ninety-five thousand one hundred and forty-five feet, at five dollars per thousand feet, amounting to two thousand nine hundred and seventy-five dollars and seventy-three cents, which has been paid you by us by cash and note; said logs were not delivered by you according to your contract, and we are greatly damaged thereby; we shall not, therefore, now accept or receive said logs on the contract, and shall look to you for the money already paid you by us, and interest thereon, and the note of ours you now hold, and for our damages sustained by your failure to perform the contract according to its terms.

"'Yours, &c.,      BATES, GOULD & CO.'

"Upon the facts in this case, as found above, it is held that the defendant should have delivered or put said logs afloat in Fish creek, just above Vickery's shanties, in time for the spring freshet or rise of water, about the first of April, 1872; and that the defendant, having failed of delivery, as hereinbefore set forth, is justly indebted to the plaintiffs in the sum of three thousand four hundred and fourteen dollars and three cents, being for the sum paid upon the purchase of said logs, and interest thereon from Feb. 28th, 1872, to date."

The court was requested as a matter of law to find from the facts proven, among other things, "that there is no proof which will warrant a judgment for the plaintiffs in the action;" also, that "plaintiffs cannot rescind the contract without consent of defendant, for, by the terms of the contract the title to the logs passed to the plaintiffs as they were on the bank of the creek. It was an executed agreement, and such an agreement cannot be rescinded by one

party in the absence of fraud, and without the consent of the other. And if not an executed contract, it is not one that plaintiffs could rescind without consent of the defendant, and especially at the time notice of rescission was served in this case."

*Clute & Smith* for plaintiff in error.

*Marble & Webster* for defendants in error.

CHRISTIANCY, J.

Admitting for the present that the circuit judge was right in his findings, both of fact and law, upon every other point; that the title did not pass to plaintiff until the logs were delivered afloat in the stream, and that they would have had the right to rescind had they done so with sufficient promptness, the main, the previous question, upon which the whole case must turn, is whether they had the right to rescind at the late day, and under the circumstances, when they attempted to exercise that right.

If the finding of the judge was correct, that " the testimony shows that said five-hundred-dollar payments " [of September 2d and November 12th, 1872] " were made by the plaintiffs to the defendants upon the assurance by the defendant, through Rogers, that the logs were all afloat, or nearly so; that the plaintiffs knew nothing to the contrary, and relied upon these assurances," then the delay in exercising the right to rescind, or their tardiness in attempting it, may be sufficiently explained and excused. And we are bound to hold this finding of fact correct and conclusive, if there was any evidence in the case tending to sustain it as a whole. But as the evidence is all given in the record, if there be none to sustain this finding, or if any particular and material part of this finding be without evidence to sustain it, then the finding thus far is not binding, and must be held erroneous.

There was evidence tending to show that the two five-hundred-dollar payments alluded to were made by the plaintiffs to the defendant upon the assurance by the defendant that the logs were all afloat, or nearly so; and that the plaintiffs, at the time of those payments (September 2d and November 12th, 1872), knew nothing to the contrary. But the letter of plaintiffs (written by Bates), to which the judge alludes, was written June 10, 1873, about seven months after those payments. And I have searched the record in vain for any evidence tending to prove that when this letter was written by the plaintiffs they relied upon any representations of the defendant, that " the logs were all afloat, or nearly so," or that the plaintiffs, after such representations were made, had not, long prior to the writing of this letter, learned the fact that they were not all afloat, or nearly so. It may be true, and there is some evidence to show, that Bates personally (the member of the firm who wrote the letter) had not, up to the time it was written, learned the fact that the logs were not all, or nearly all, afloat, and that the representations when made were not true. But upon the question of acquiescence, and undue delay in exercising the right to rescind, the firm must be conclusively held to have known every fact material to the question, which any member of the firm knew; and to have had notice of every thing of which any one of them had notice; and any act of any member of the firm, or any letter written by one of them in their name, with reference to any of this business with the defendant, must be treated as the act or letter of the firm.

Now, Gould, one of the members of the firm, on his direct examination, testified as follows: " The fifth day of July, 1872, I paid them five hundred dollars on our note; I asked Rogers if those logs were afloat, and he said they were, or the biggest part of them, as he understood; I think it was along in August, 1872; I will not be positive; I was at Hubbardston running logs down the creek, and I asked him again about it, and he said he understood they

were pretty much all broke in. I paid him five hundred dollars on the note on the fifth of July, and paid him 'five hundred dollars on a note, and renewed the balance at sixty days. I have not got the date of it. It was endorsed on the note. It was after the fifth of July. We paid in July and subsequent to that, the installments of five hundred dollars each" [referring, as all the testimony shows, to the payments of September 2d and November 12th, 1872], "because we supposed it was due them. I asked Rogers at the time if the logs were afloat, and he said they were, or nearly all; and it was upon the assurance that they had put the logs afloat, that we paid that money. I did not see those logs in the year 1872, after the first time I went to see them in February; I knew they were not put afloat during that year, because I saw them there on the roll-way on the 9th of July, 1873, all except thirty or forty logs."

Now, thus far it is clear enough that his testimony tends very directly to show that all the money that was paid was paid upon the assurance of the defendant that the logs were all, or nearly all, afloat; and had the testimony been left to stand thus, it would also have tended to show that the letter of the 10th of June, written to the defendant in the name of the firm by Bates, was written in reliance upon the same assurances. The witness gives the time of these conversations with Rogers, when these assurances were made, as the several times when the payments were made, and besides these times, once in August, 1872; and specifies them so particularly as to lead to a strong inference that these were all the times when he claims that there were any such conversations or assurances.

Upon his cross-examination, being shown the letter of his firm to defendant, dated June 10, 1873, he says: "I guess likely Mr. Bates wrote that letter,—one of our firm. I first ascertained those logs were not put afloat, last winter; I think it was along in February last." The trial being in November, 1873, it was clearly therefore in February, 1873, that he ascertained that the logs were not put

afloat. In other words, it was in February, 1873, some three months after the last money had been paid, and some four months before the letter of June 10th was written, and nearly five months before any attempt was made to rescind, that the firm ascertained that the logs had not yet been put afloat; and after learning this fact, it is, of course, idle to talk of any subsequent act of theirs being done or omitted, in reliance upon any of those representations of the defendant, to which Gould had testified, the last of which was November 12, 1872, all of which they had now learned were untrue, and that the logs had not been afloat as represented. If, therefore, the witness Gould ever saw Rogers after the time to which he had testified on his direct examination, and again received, at such subsequent time, any new and further assurances of the logs being all afloat or nearly so, it was clearly for his interest, and that of his firm, now to state that such subsequent assurances were made, and the time when, and by whom made. The witness evidently saw the importance of this, as will presently appear, in view of the letter of June 10th, which he had just admitted. But though he again refers to those assurances in a general way, he does not state that he had ever, after the 12th November, when the last money was paid, seen Rogers or had any conversation with him; or that he, or any officer of the company, had given any new or further assurances of the kind in question; but simply says, generally, immediately following the portion of his testimony above quoted, "after we learned they were not afloat, in February last, we did not make any payment; we made no offer of payment to defendants. I asked him (Rogers) if those logs were afloat yet, and he said, he understood they were pretty much all afloat." He does not here state when he asked Rogers, nor when Rogers told him this; he found no difficulty in stating the time in his direct examination, and the occasion, and the fact of meeting Rogers at those times. And the only fair interpretation, as it seems to me, of the language just quoted, is, that it

refers to the assurances and the times spoken of in his direct examination, where the times and particular occasions had been mentioned; and therefore it was unnecessary to repeat them here. Such, it seems to me, is the only fair interpretation to be given to his testimony as a whole. This interpretation is also in full accord with the letter of June 10th, and what must have been Gould's understanding of his own testimony, in connection, or with reference to, the letter; for he says, " after we learned they were not afloat, we made no offer of payment to defendant."

Finally, the counsel for the plaintiffs below, defendants in error, does not, by his brief, claim any different construction of the language in question, from that which I have adopted.

There certainly is no other evidence in the case showing, or tending to show, any assurances after the 12th of November, 1872, made by defendant, that the logs were afloat. Nor is there any thing tending to show that the plaintiffs, between February, 1873, when they learned the logs were not afloat, and the first of July, when they attempted to repudiate, had any reason to believe that the logs were afloat, or had ever been informed that they were.

Here, then,—independent of the letter of plaintiffs of the 10th June, or any effect to be given to that letter,—is a delay of between four and five months, after the plaintiffs had learned that the logs were not afloat, and that the assurances given to the contrary were not true, before any attempt is made to rescind. This acquiescence and delay is in no manner excused or explained. If the plaintiffs could have rescinded at all, they could only do so within a reasonable time; and we are bound, I think, in the absence of any evidence excusing it, to notice that this long period of delay was more than could reasonably be required for that purpose. The law is so well settled upon this point, that it would be a waste of time and space to cite authorities.

But the letter of the plaintiffs, of June 10, 1873, written

when the firm had full knowledge that the logs were not yet afloat in February, 1873, shows clearly that at that time the plaintiffs had no intention of rescinding the contract, but led the defendant to believe that they intended to carry it out, and to pay as soon as they could raise the money, and there is no fact shown as occurring after that time, or any new information obtained by them, giving any better grounds for rescinding than they then had.

Finally, it may well be doubted whether the letter or notice given by the plaintiffs to defendant, by which they undertook to rescind, is not, of itself, as much of a confirmation as a rescission of the contract. They could not, in any event, rescind in part, and hold it valid or insist upon it in part, or valid for one purpose and void for another. They must rescind entirely, or not at all. But here, after declaring their intention to rescind, they say further, "we shall look to you for our damages sustained by your failure to perform the contract according to its terms."

The court very properly held (and such is obviously the law) that "plaintiffs cannot rescind the contract and then, insist on damages for not performing; for when a contract is rescinded an action will not lie for the breach of it."

It is very clear, I think, that upon the pleadings and evidence in this case, no action for the purchase price paid can be maintained upon any other basis than that of a rescission.

There being no such rescission established in the present case, the judgment must be reversed, with costs, and a new trial awarded.

As we are not authorized upon the case before us to assume that evidence can be adduced on a new trial which will establish the right to rescind, and without this the other questions in the case would be immaterial, we do not notice them here.

GRAVES, CH. J., and COOLEY, J., concurred.

31 MICH.—22.

CAMPBELL, J.

I concur in the result arrived at by my brother Christ-iancy. The declaration is framed on a rescinded contract, and not to recover damages on a broken contract. Whether the time under the contract had been extended with such knowledge as to bind the purchasers, is a question which, under this declaration, would go to their right of rescission; and upon a careful review of the case, I am satisfied that the letter of July 1 cannot be treated as a rescission, even if the parties could then have rescinded. Taken altogether, it is rather an assertion of a breach of the contract, and of such delay as would justify a refusal to accept the lumber agreed to be delivered, by reason of the breach, and a claim of damages instead of a return of the consideration. No recovery can be had under this declaration for such a cause of action, and I express no opinion upon their rights on the merits.