HAMILTON *v.* PARK & McKAY CO.

1. CONTRACTS—UNPATENTED DEVICE—ROYALTIES.

An agreement for the payment of royalties to the inventor of an unpatented device pending the issuance of a patent, in consideration of an exclusive right of sale, is valid and enforceable.

2. SAME—CONSTRUCTION—PATENTS.

A contract by which the inventor of a certain device binds himself not to make, manufacture, or sell, or to transfer the right to any other person than the other party to the contract, and which definitely fixes the time when payment of royalty thereon shall begin at one year from the date when the device is modeled and ready to be put on the market, and which authorizes such other party in case a patent is not granted, or in case it is decided not to be valid, to declare the contract ended, requires the payment of the royalty from the time specified, although the patent has not been granted at that time.

3. SAME—RESCISSION—EFFECT OF.        •

The rescission of such contract by the inventor for failure of the licensee to make payment of royalty at the time stipulated in the contract does not preclude the former from recovering the royalties already earned.

4. SAME—MINIMUM LIABILITY.

One who, in consideration of the exclusive right of sale of a device, contracts to pay the inventor a royalty of $1 each "on not less than 1,000 " of such articles for each year, is bound to pay royalties of at least $1,000 a year, regardless of the number of articles sold.

Error to Wayne; Hosmer, J. Submitted February 11, 1897. Decided March 17, 1897.

*Assumpsit* by John H. Hamilton against the Park & McKay Company to recover royalties due under a contract for the manufacture and sale of a certain device. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

The special count of the declaration sets up the following agreement between plaintiff and defendant, dated February 21, 1893:

"*Whereas,* John H. Hamilton, of Detroit, Wayne county, Mich., is the inventor and sole owner of a certain new and useful improved syphon jet water-closet, for which he has filed an application for letters patent of the United States, dated  *  *  *,  serial No. 443 930; and *whereas,* the Park & McKay Co., of Detroit, Wayne county, Mich., a corporation doing business under the laws of the State of Michigan, are desirous of acquiring the sole right and license to manufacture, make, and sell said syphon jet water-closet in accordance with the invention set forth in said application, and any and all improvements thereon which said Hamilton shall hereafter make, invent, and patent: Now, *therefore,* be it known that for and in consideration of one dollar paid, and of the covenants and agreements hereinafter contained, to the faithful performance of which the parties hereto mutually agree and bind themselves, the parties hereto agree as follows:

"(1) The said Hamilton agrees to and does hereby give and grant unto said Park & McKay Co. the sole and exclusive right and power to make, manufacture, and sell throughout the United States and territories thereof (and any other territory or place where he may now or hereafter have the exclusive control of) the syphon jet water-closet, embodying the principles set forth in said application, and the letters patent which shall hereafter issue therefor, and he also agrees to give and grant to said Park & McKay Co. a similar license to any and all improvements on said syphon jet water-closet, and patents for the same, for which he may at any time in the future become possessed of or be the inventor of, subject, however, to the same terms and conditions and royalties as hereinafter set forth.

"(2) Said Park & McKay Co. agree to pay said Hamilton, or his heirs, executors, administrators, or assigns, as a royalty, the sum of one dollar for each of said syphon jet water-closets sold by said company.

"(3) Said Park & McKay Co. agree to keep a full and exact account of all sales of said syphon jet water-closets made by them, which accounts shall be open to said Hamilton at his request; and that upon the first days of Janu-

ary, April, July, and October of each and every year to render a true account in writing of all said syphon jet water-closets sold, and to accompany the same with all royalties due, in current funds, during the continuance of this agreement.

"(4) That said Park & McKay Co. agree to use their best business tact and power to introduce and push and extend the sale of said syphon jet water-closet, and that they will supply the demand therefor at reasonable prices. *That, commencing from and after one year from the date that said closet is modeled and ready to be put in the market, said Park & McKay Co. shall pay royalty on not less than one thousand closets for each and every year during the life of said patent; Provided, however, that this fourth clause is to be suspended during such time as said Park & McKay Co. shall be unable, without fault of their own, to have said closets manufactured for them, either because of strikes of the workmen, combination between the owners of the potteries, or other like cause. It is also understood and agreed that the one thousand closets hereinbefore mentioned includes all closets to be made under contract dated July 14th, 1891, patent No. 453,809; that is, that said one thousand closets means one thousand closets shall be sold under both patents, and not one thousand closets shall be sold under each patent. It is also agreed that if said patent is not granted, or, if granted, if said patent shall be decided to be invalid by any court, said Park & McKay Co. shall have the privilege of declaring this contract ended.*

"(5) Said Park & McKay Co. agree not to manufacture or sell any other syphon jet water-closet owned by any other person than said Hamilton.

"(6) It is further agreed that in case said Park & McKay Co. shall willfully or negligently fail to fulfill any obligation incurred by them in this agreement, that the said Hamilton may terminate any license given to them by giving them written notice thereof; but the said Park & McKay Co. shall have thirty days from the service of such notice in which to fulfill their agreement."

It is then averred that said closet was modeled and ready to be put in use on the market on the 31st day of October, 1892, and was put in use and sold on the market by the defendant on that day and since.

This suit was commenced April 27, 1895. The patent was not issued to the plaintiff until June 18, 1895. Plaintiff introduced the contract in evidence, and gave testimony tending to sustain the other averments of his declaration. The defendant introduced no proofs. On March 6, 1895, plaintiff wrote the defendant, notifying it that, on account of the failure on its part to pay the royalty stipulated in the agreement, the license to manufacture and sell closets under said agreement was revoked. The court directed a verdict for the defendant, for the reason that the revocation of the license prevented plaintiff from recovering for royalties earned prior thereto. The learned circuit judge held that the plaintiff had two remedies,— either to sue in *assumpsit* to recover the royalty due, leaving the contract in force, or to forfeit the contract,— and that, if he forfeited the contract, he waived the right to recover for royalties.

*Bowen, Douglas & Whiting,* for appellant.

*Alex. D. Fowler,* for appellee.

GRANT, J. (*after stating the facts*). 1. It is insisted that the plaintiff cannot maintain an action before the issuing of the patent, and that no liability was intended to be incurred until a valid patent had been granted. This was a matter of contract between the parties. The inventor of an unpatented device may make a valid contract for its manufacture, use, or sale. It is no objection to the validity of such a contract that any person may manufacture it until a patent is issued. The vendee or licensee, in the absence of fraud or mistake, must abide by his contract. It was understood by these parties at the time the contract was made that no patent had been issued, and the contract was made with reference to that fact. If, therefore, the defendant contracted to pay a royalty before the patent was issued, the plaintiff is entitled to recover. *Ingraham* v. *Schaum,* 157 Pa. St. 88; *Hall Manfg. Co.* v. *American Ry. Supply Co.,* 48 Mich. 331;

*Forncrook Manfg. Co.* v. *Barnum Wire & Iron Works,*
54 Mich. 552; *Brush Electric Co.* v. *California Electric Light Co.,* 52 Fed. 945, 962.

2. Does the contract obligate the defendant to pay a
royalty before the issuing of the patent? Upon the
answer to this question depends the plaintiff's right of
recovery. We think the question must be answered in
the affirmative. Plaintiff bound himself by the contract
not to make, manufacture, sell, or to transfer the right
to others. The time when the royalty should begin is
definitely fixed by the contract at one year from the date
when the closet is modeled and ready to be put in the market. It does not depend upon the date of the issue of the
patent. It was also contemplated that the patent might
not be granted, or, if granted, that it might be decided to
be invalid, in which case the defendant was entitled to
declare the contract ended. This language is inconsistent with the position that the royalty should begin at the
date of the patent. Previous manufacture was plainly
contemplated, and the date is averred in the declaration
and fixed by the proofs.

3. Did the notice of forfeiture destroy the right to recover for royalties accruing prior thereto? In support of
the ruling of the court below counsel cites *Jewett* v.
*Petit,* 4 Mich. 508; *Goodspeed* v. *Dean,* 12 Mich. 352;
*Hubbardston Lumber Co.* v. *Bates,* 31 Mich. 158, 169;
Curt. Pat. § 218; *Woodworth* v. *Weed,* 1 Blatchf. 165;
*Woodworth* v. *Cook,* 2 Blatchf. 151. *Jewett* v. *Petit*
states the familiar rule that when one enters into a contract induced by fraud he must affirm or disaffirm on discovery of the fraud, and that he cannot adopt that which
is for his own interest and reject the residue. *Hubbardston Lumber Co.* v. *Bates* is a similar case. *Goodspeed*
v. *Dean* involved the rights of parties to a land contract.
Plaintiff, the vendor, after electing to treat the contract
as void, sought to recover the amount then due upon the
contract. The basis of that decision is the familiar principle, legal as well as equitable, that a party cannot keep

his land and have the purchase price too.   The citation in Curtis on Patents is based upon *Woodworth* v. *Weed*, 1 Blatchf. 165.   In that case plaintiff had granted to defendant a license to construct and use one of his machines, for which the defendant gave him promissory notes amounting to $400, payable at different times.   Upon failure to pay the first note, plaintiff filed a bill in equity charging that the license and permission to use the machine had become void, and praying for an injunction to restrain its use.   A provisional injunction was applied for, which was opposed by the defendant, who filed an affidavit as to his financial responsibility.   It was held that the plaintiff might resort to his remedy at law to enforce the collection of the notes, or treat the rights of the defendant as forfeited, and enjoin him from the use of the machine. If it be conceded that that case determined that plaintiff could not maintain an action at law after his election to rescind and enjoin the use, the reason is obvious, viz., the consideration to be paid was an entirety, indivisible into past and future payments.   *Woodworth* v. *Cook* is a similar case.

None of these decisions are applicable to cases where the licensee agrees to pay a royalty for every machine manufactured and sold, or a specific sum at stated periods. The obligation to pay becomes fixed in such cases the moment the machine is manufactured and sold, or at the time fixed by the contract for the payment of the amounts due for past use or sale.   The licensee refuses to pay. The licensor, as he has the right to do, rescinds the contract.   Upon what principle of law or logic should the licensor be held thereby to lose what is honestly his due, and of which the licensee has had the benefit?   The effect of such a rescission must be determined in view of all the surrounding circumstances.   Plaintiff is not seeking his property and its price too.   He has performed his agreement.   Defendant is in default, and indebted for accrued royalties.   This case is rather in the nature of a lease

where the lessee is in default of his rent. He may be ousted for nonpayment, but this does not bar an action to recover the rent due. We think the authorities sustain the plaintiff's right of action. *Hurst* v. *Bookbinding Co.*, (Com. Pl.) 22 N. Y. Supp. 371; *Mayor, etc., of New York* v. *New York Refrigerating Construction Co.*, 146 N. Y. 210. The true rule is this: The rescission of a contract as against the party in default does not, in the absence of an agreement, destroy the right to recover royalty or rent which has already been earned. The past-due payments are separable from future payments, and the rescission is neither *ab initio* nor *in toto*, but solely *in futuro*.

4. By the terms of this contract the defendant was under obligation to pay a royalty of at least $1,000 a year, regardless of the number of closets sold. *Preston* v. *Smith*, 156 Ill. 359; *Beecher* v. *Stein*, 139 Pa. St. 570.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.