PERFECTION SOCKET CO. *v.* AMERICAN FORGING & SOCKET CO.

CONTRACTS—PATENTS—ACTION FOR ROYALTIES—RESCISSION OF CONTRACT—LIABILITY.

> In an action upon a contract for royalties for the exclusive right to use a patent device for bow sockets for automobiles, and providing that if any other device were used the contract should be terminated, where defendant operated under said contract for some time, when it rescinded same, it was liable for the royalties on all bow sockets manufactured up to the time of the rescission, although in fact said patent was never used by it.

Error to Wayne; Davis (Frank D. M.), J., presiding. Submitted October 15, 1919. (Docket No. 46.) Decided April 10, 1920.

Assumpsit by the Perfection Socket Company against the American Forging & Socket Company for royalties due under a contract. Judgment for plaintiff. Defendant brings error. Affirmed, conditionally.

*Arthur P. Hicks,* for appellant.

*James O. Murfin,* for appellee.

MOORE, C. J. Plaintiff, as assignee of one Ferguson, brings this action of assumpsit against the defendant to recover a royalty of six cents per set of bow sockets for all bow sockets manufactured by defendant. The declaration also contained all the common counts. The defendant in its plea of general issue gave notice that it never made use of the device covered by the patents referred to in the contract. The case was tried before the judge without a jury.

209—Mich.—32.

From a judgment in favor of the plaintiff in the sum of $3,311.28 the case is brought here by writ of error.

The defendant claims that under the undisputed testimony, no sockets were ever manufactured by it coming within the scope of the contract sued upon, and that, therefore, under the declaration and the proofs, there should have been a judgment of no cause of action; that under the pleadings and proofs the defendant could in no event be held liable for royalties on sockets manufactured after June 24, 1918.. The material parts of the contract are as follows:

"This agreement made this 8th day of May, A. D. 1917, by and between the American Forging & Socket Company, of Pontiac, Michigan, a Michigan corporation, hereinafter referred to as the party of the first part, and Richard F. Ferguson, of Ecorse, Wayne county,.Michigan, hereinafter referred to as the party of the second part,

"Witnesseth, for and in consideration of the. mutual covenants herein contained, it is hereby agreed by and between the respective parties to this agreement, as follows:

"1st. Whereas, the said Richard F. Ferguson, party of the second part, is the owner of certain patents for automobile bow sockets, originally issued to Walter P. Dorl, the serial numbers of which are 1,121,553, 1,157,977 and 1,162,042.

"2d. And whereas the said party of the first part is desirous of using said patents,

"Therefore it is mutually agreed by and between the parties hereto that the said party of the first part shall have the exclusive right to manufacture the above mentioned socket, under the above mentioned patents, also any improvement heretofore made upon the same, and any improvement that may hereafter be made, provided that the said first party shall use said patent exclusively.

"It is further agreed that the said first party shall pay for the privilege above contemplated as a royalty to the said second party, his heirs or assigns, for any sockets manufactured by them, using this device or by

their direction, or in their behalf, the sum of six cents for each set of sockets so made and delivered.

"It is further agreed that the said first party shall use its best endeavors to manufacture this device, and shall manufacture no other device of a similar character during the life of said patent, otherwise this contract is terminated.

"It is further agreed by and between the parties hereto that should the factory owned by the party of the first part be destroyed by fire, and said first party does not rebuild or for any other reason within their control they should cease the manufacture of sockets using the device above described, for a period of three consecutive months, then and in that event, this contract shall be considered terminated, and of no force and effect.

"It is further agreed by and between the parties hereto that the party of the first part shall keep a true and correct account of all sockets made by it, caused to be made by it, or made for its benefit, and render a true and correct statement to the said second party on the 10th day of each and every month, at which time the settlements shall be made at the rate above specified, and for the amount so made by the party of the first part."

In the findings of fact made by the circuit judge appears the following:

"The socket, Exhibit 2, was obviously the socket contemplated by the parties when they entered into the contract on May 8th, referred to in the first paragraph hereof.

"The socket, Exhibit 2, and its further development appears would not be covered by the patents referred to in the first paragraph of the contract set forth in the first paragraph hereof.

"The defendant company sold 93,171 sockets up to June 24, 1918. They have sold 19,382 sockets between that date and the date of the trial, December 26th. They have paid royalties under and by virtue of the contract set forth in the first paragraph hereof, on 57,365 sockets.

"They had the opinion of a patent lawyer in February to the general effect that the product they were

manufacturing was not covered by these patents.
* * *

"On the 24th day of June, 1918, the defendant company, by a resolution of its directors, decided to recognize no further liability under the contract of May 8th, and advised the plaintiff company that they never had used the devices referred to in said contract and had no intention of so doing."

The plaintiff did not propose any amendments or take any exceptions to these findings.

It is conceded that there were 35,806 sets of sockets manufactured by defendant prior to June 24, 1918, on which royalties had not been paid. The amount of these royalties would be $2,148.36. The president of the defendant company testified that one of the reasons for making the contract was to avoid litigation. This witness was interested as a member of the plaintiff company and was the only director who was not in favor of the resolution of June 24, 1918.

It appears beyond controversy that the parties to this contract acted under it until the adoption of the resolution of June 24, 1918. At that date they had credited upon the books of the company for royalties $1,499.98, which has never been paid. We have already seen that the patents mentioned in the contract did not cover the sockets which were in fact made. It must be assumed that the reference in the contract to the patents had some purpose.

A contract having some features in common with the one before us was under consideration in *Hall Manfg. Co.* v. *Railway Supply Co.*, 48 Mich. 331. The opinion reads in part as follows:

"It is in the second place said that this agreement was not made upon a valuable consideration, as the patent referred to was void.

"This question we think is not open to controversy in the present case. The contract shows that the defendant, at the time of this agreement, was the owner of the patent with which this is supposed to conflict,

and that this agreement was entered into apparently to avoid any conflict, and in order that the royalty should be divided. The defendants therefore are in no position to question the validity of the plaintiff's patent in the present action brought to recover a royalty earned or due on account of rails manufactured and sold thereunder."

In *Hamilton* v. *Park & McKay Co.*, 112 Mich. 138, Justice GRANT, speaking for the court, said:

"1. It is insisted that the plaintiff cannot maintain an action before the issuing of the patent, and that no liability was intended to be incurred until a valid patent had been granted. This was a matter of contract between the parties. The inventor of an unpatented device may make a valid contract for its manufacture, use, or sale. It is no objection to the validity of such a contract that any person may manufacture it until a patent is issued. The vendee or licensee, in the absence of fraud or mistake, must abide by his contract. * * *

"Did the notice of forfeiture destroy the right to recover for royalties accruing prior thereto? In support of the ruling of the court below counsel cites *Jewett* v. *Petit*, 4 Mich. 508; *Goodspeed* v. *Dean*, 12 Mich. 352; *Hubbardston Lumber Co.* v. *Bates*, 31 Mich. 158, 169; Curtis on Patents, § 218; *Woodworth* v. *Weed*, 1 Blatchf. 165; *Woodworth* v. *Cook*, 2 Blatchf. 151. * * *

"None of these decisions are applicable to cases where the licensee agrees to pay a royalty for every machine manufactured and sold, or a specific sum at stated periods. The obligation to pay becomes fixed in such cases the moment the machine is manufactured and sold, or at the time fixed by the contract for the payment of the amounts due for past use or sale. The licensee refuses to pay. The licensor, as he has the right to do, rescinds the contract. Upon what principle of law or logic should the licensor be held thereby to lose what is honestly his due, and of which the licensee has had the benefit? The effect of such a rescission must be determined in view of all the surrounding circumstances. Plaintiff is not seeking his property and its price, too. He has performed his

agreement. Defendant is in default, and indebted for accrued royalties. This case is rather in the nature of a lease where the lessee is in default of his rent. He may be ousted for nonpayment, but this does not bar an action to recover the rent due. We think the authorities sustain the plaintiff's right of action. *Hurst v. Bookbinding Co.* (Com. Pl.), 22 N. Y. Supp. 371; *Mayor, etc., of New York v. Construction Co.,* 146 N. Y. 210 (40 N. E. 771). The true rule is this: The rescission of a contract as against the party in default does not, in the absence of an agreement, destroy the right to recover royalty or rent which has already been earned. The past-due payments are separable from future payments, and the rescission is neither *ab initio* nor *in toto,* but solely *in futuro.*"

In the instant case after the contract was made both parties acted under it until defendants gave notice of rescission. We think, under the facts disclosed by this record, they had a right to give this notice, and that they should pay royalties up to the time of the rescission. The trial judge, however, required them to pay royalties as though no notice of rescission had been given and up to the time of the trial. In doing this we think he was wrong. If the plaintiffs will remit the judgment to the sum of $2,148.36, with interest thereon at five per cent. from June 24, 1918, within ten days of notice of the filing of this opinion, the judgment thus modified will be affirmed. Otherwise it will be reversed and a new trial ordered. The defendant will recover costs.

STEERE, BROOKE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.

Justice KUHN took no part in this decision.