## AMERICAN DELINTING CO. v. POMERANING.

(District Court, M. D. Pennsylvania.   January Term, 1921.)

No. 1235.

Patents ⟨⟩218(5)—Contract construed to require payment of minimum license fee.

A contract by which plaintiff granted to defendant an exclusive license to manufacture and sell under certain patents, for which defendant agreed to pay to plaintiff 25 per cent. of the net profits from the sale of the patented inventions, "which share of said net profits in no event shall be less than $5,000 per annum after the year 1917," *held* to bind defendant to pay a minimum of $5,000 per year for use of the patents, though he made no net profits.

At Law.   Action by the American Delinting Company against Joseph W. Pomeraning.   On affidavit of defense, raising questions of law. Defense overruled.

George Kunklre and John McI. Smith, of Harrisburg, Pa., for plaintiff.

Olmsted, Snyder & Miller, of Harrisburg, Pa., for defendant.

WITMER, District Judge.   Plaintiff seeks to recover the sum of $5,000 under the terms of an agreement, whereby the plaintiff, who was the owner of certain letters patent, assigned to Joseph Pomeraning, the defendant herein, the exclusive use of such patents for the full term thereof.   The portion of the agreement material to the question involved is as follows:

"This license is granted upon condition that the said Joseph Pomeraning, his heirs, executors, administrators, or assigns, shall well and truly cause to be paid, to the American Delinting Company, its successors or assigns, during each year for the full term of said respective patent, 25 per cent. of the net profits derived from the manufacture and sale of the several devices and inventions enumerated and described in said United States letters patent No. 672,068 and 1,032,938, less the proportionate share of governmental and profit taxes, and which share of said net profits in no event shall be less than $5,000 per annum after the year 1917, such payment to be made in the manner following.   On January 1st of each year a sworn statement shall be exhibited to the American Delinting Company, its successors or assigns, giving the number of machines sold, and giving in detail a profit and loss statement of the business ending the preceding December 31st, and payment of the sum or sums so determined to be due shall be made within 15 days thereafter and in event of the default in such payment for the period of 30 days, this license may forthwith be revoked. * * *"

The defendant rendered a statement for the year 1918, showing a net profit of $22.72, but paid plaintiff for that year $5,000.   A statement for 1919 was rendered about Jan. 23, 1920, showing a deficit for that year of $9,497.25.   Defendant refused to pay plaintiff $5,000 for the year 1919, contending that, as there were no net profits, plaintiff, under the terms of the agreement, was not entitled to receive any sum, that no minimum was intended, and that plaintiff's only remedy under the assignment, in case the net profits amounted to less than $5,000 per year, was a revocation of the assignment.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In contracts of this nature, probably the most usual method of expressing the consideration flowing to the assignor is to provide for a "royalty" of a certain amount per article on each article manufactured or sold, with a provision usually inserted, for the protection of the assignor, that such royalty shall equal at least a certain amount, or that the assignee shall pay royalty on not less than a certain number of such articles, or that the assignee agrees to sell not less than a certain number of such articles, during a stated period. The effect in each case, in the absence of anything specifically to the contrary in the contract, is the same, namely, to provide for a minimum liability on the part of the assignee and to protect the assignor. In such case, the assignee is bound to pay at least the minimum royalty, regardless of the actual number of articles sold. Nor is this affected by the fact that the assignor is given an option to terminate the contract in case such minimum is not attained. Preston v. Smith, 156 Ill. 359, 40 N. E. 949; Hamilton v. Park & McKay Co., 112 Mich. 138, 70 N. W. 436; Meyer v. Brenzinger, 22 Misc. Rep. 712, 49 N. Y. Supp. 1091; Beecher v. Stein, 139 Pa. 570, 21 Atl. 79.

To provide, as in the case before us, that the "share of said net profits in no event shall be less than $5,000 per annum," is to provide the very same thing in intent and effect that is contained in a provision that assignee shall not sell less than a certain number of the articles in a given period. In a case of the latter kind (Meyer v. Brenzinger, supra) the assignee's theory was that—

"Under a proper construction of the contract, his company was bound to pay royalties only on sales actually made; that the only effect of the failure to comply with the agreement to sell 250,000 buttons was the forfeiture of the option to renew the contract or buy the patent."

Judge Beekman said:

"We do not think there is any basis for this claim. The agreement on the part of the company to sell 250,000 buttons within the year is as plain as language can make it, and their failure to keep it entitled the defendants to receive a sum equivalent to a royalty, at the rate specified, on a sale of 250,000 buttons. This construction is both obvious and reasonable. The defendants had surrendered to the company for the period of a year the exclusive possession and use of the patent, and during that time they were precluded from deriving any advantage from it, except through the performance of the agreement under consideration. It was doubtless the expectation of the company that they would be able to sell at least 250,000 buttons within the prescribed period, and it was quite reasonable that the defendants, in consideration of the exclusive rights which they had conferred, should require that, so far as they were concerned, such expectation should be reduced to a certainty. In short, the agreement was that the defendant should receive for what they gave at least the sum of $625 and as much more as might result from sales actually made by the company in excess of 250,000 buttons."

What was said in that case is entirely applicable in this case. The contract is explicit. The exercise of the right of rescission operates neither ab initio, nor in toto, but solely in futuro. Hamilton v. Park & McKay Co., supra. So far as concerns the year 1919, which had already passed, and for which the statement was rendered, showing a deficit, it is evident that the defendant, Pomeraning, was nevertheless under a legal obligation to pay the plaintiff the minimum amount which

he had guaranteed would be plaintiff's share of the net profits. The defendant was no doubt disappointed in the number of machines he was able to sell, but this could not affect the fact that he had contracted to obtain a certain amount of net profits, as plaintiff's minimum share for the privilege of controlling the monopoly secured by the letters patent.

The conclusion here reached was no doubt entertained by the parties to the contract, as evidenced by the payment of the minimum of $5,000 for the year 1918, when the profits netted the nominal amount of $22.-72. The affidavit bases the legal defense on the assumption that, inasmuch as plaintiff's statement showed there were no net profits for the year 1919, plaintiff could not recover. This defense having been found without merit, the plaintiff's statement is held sufficient and defendant is allowed 30 days in which to file a supplemental affidavit, otherwise, the clerk is instructed to enter judgment for the plaintiff for want of a sufficient affidavit of defense.

⬤➞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes