(No. 20282.— )

A. M. MYERS *et al.* Plaintiffs in Error, *vs.* JOHN M. GERHARDT, Defendant in Error.

*Opinion filed June 18, 1931.*

A. C. & BEN F. ANDERSON, for plaintiffs in error.

VAUSE & KIGER, (J. I. DILSAVER, of counsel,) for defendant in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

A. M. Myers and W. H. Drewell, plaintiffs in error, filed a bill in the circuit court of Coles county praying that certain stock in the Myers Manufacturing Company issued to John M. Gerhardt, defendant in error, be canceled and that Gerhardt be made to account for certain moneys advanced to him. Several amended bills were subsequently filed. Gerhardt filed a cross-bill for an accounting under a

contract which arose out of the transactions between these several parties, by the terms of which he gave Myers and Drewell the exclusive right to use a certain device developed by him. Answers and replications were duly filed and the cause was heard by the chancellor. The equities were found to be with Gerhardt. The bill as amended was dismissed for want of equity, and by the decree which was entered plaintiffs in error were ordered to pay Gerhardt the sum of $2500. This decree was affirmed by the Appellate Court, and the cause is here on *certiorari*.

Counsel for plaintiffs in error say: "The main purpose of this appeal is to reverse the decree for an accounting. While the court also dismissed the original bill, that has become of no great importance."

In 1926 plaintiffs in error were engaged as a co-partnership in the manufacture of automobile trunks and luggage carriers under the name of Myers Manufacturing Company. For about twenty-five years previous Myers had been an oil-well driller and had also followed the oil-well leasing business. Drewell was president of the National Trust Bank of Charleston and had been in the banking business for about twenty-two years. The products were manufactured by the Myers company under a license from a Sioux City, Iowa, company, which owned the patents. Under these patents the Myers company had to manufacture a different design of platform or carrier for each make of automobile in order to attach its trunks to the car. Defendant in error had been in the employ of the Sioux City company but was sent to the Myers company to assist it. While working at the Myers plant he conceived the idea of an adjustable carrier or platform which could be used to attach trunks to several makes of cars and attempted to develop a device which would accomplish that purpose. He did his work on this device at the plant. There was no secrecy about it and plaintiffs in error were shown models of it. Application for a patent was made by defendant in error and filed in the

United States patent office January 3, 1927. On January 7, 1927, after numerous conferences between the parties and their attorneys and after several tentative contracts had been drawn and discarded, plaintiffs in error and defendant in error entered into the contract which constituted the basis for the relief awarded defendant in error under his cross-bill. This contract recited, that "whereas, the party of the second part [defendant in error] has heretofore invented an appliance known and named the Universal Trunk Platform and Bumper Connection, to be used in installing and attaching auto trunks, bumpers and luggage carriers to automobiles; and whereas, the said party of the second part has applied to the United States government and patent authorities thereof for a patent thereon by filing with said authorities the necessary papers and application to obtain a patent upon said Universal Trunk Platform and Bumper Connection and has heretofore done all things to this date that are necessary for procuring a patent upon said connection; and whereas, it will be some time, under the usual process and procedure of the United States government authorities in granting patents, before said patent will be granted to the party of the second part; and whereas, the parties of the first part [plaintiffs in error] desire to procure the exclusive right to manufacture and sell said bumper connection and attachment from the present time thenceforth and to receive from said party of the second part a transfer and assignment of said patent when the same shall be granted unto him by the United States government, as aforesaid: In consideration of the foregoing premises and covenants and agreements hereinafter contained, the party of the second part does hereby contract and agree with the parties of the first part that they shall have the exclusive right to manufacture and sell said Universal Trunk Platform and Bumper Connection, as aforesaid, from and after the date of this contract, and that upon the granting to him by the United States government of a patent thereon, he,

the said party of the second part, will transfer all of his rights thereunder to the said parties of the first part or the Myers Manufacturing Company, incorporated." Then followed the undertaking of plaintiffs in error to pay to defendant in error twenty-five cents on each one of the appliances "upon and for the exclusive right to manufacture and sell said bumper connections from the date hereof and during the period that shall elapse before said patent is granted to the party of the second part as aforesaid." It was further provided that if twenty-five cents on each appliance should not equal the sum of $2500 in any one year, beginning with the date of the contract, plaintiffs in error should pay a sum in addition which, taken in connection with that paid at the twenty-five cent rate, would equal the sum of $2500. By further terms of the contract plaintiffs in error agreed to set over to defendant in error an undivided three-hundredths of all the property of the Myers Manufacturing Company, and in the event of organizing a corporation, to issue to defendant in error shares of stock in consideration of this three-hundredths interest. In the event that the rate of twenty-five cents per bumper did not actually equal $2500 in any one year, either party was given the option to cancel the contract at the end of any year. In February, 1927, the Myers Manufacturing Company was incorporated in Illinois for $200,000 by plaintiffs in error, defendant in error joining as an incorporator. Fifteen thousand dollars cash, and property of the appraised value of $185,000, were turned over for an equal amount of stock. The property assets consisted of factory and equipment, estimated at $10,000, and assignment of two named patents, one of which was the device of defendant in error. About April 1, 1927, sixty shares of stock were issued to defendant in error and he executed a written assignment and license to plaintiffs in error to manufacture and sell the device for which application for a patent had been made. About this time the employment of defendant in error at

the Myers factory ceased. The original bill of plaintiffs in error was filed December 27, 1927. In January, 1928, the directors of the Myers Manufacturing Company voted to transfer all the assets of that company for stock in the Lafayette Steel Company, an Indiana corporation. Myers received 985 shares of stock in the Lafayette company for his stock in the Myers company and Drewell got $30,000 for his stock in the same company. In June, 1928, the United States granted to defendant in error a patent upon the device in question. Amended bills were filed by plaintiffs in error on January 17, 1929, and June 18, 1929, and the hearing commenced on the latter date.

It is unnecessary to give detailed consideration to the contention of plaintiffs in error that they were the victims of misrepresentation as to the utility of the device in question and that the contract was brought about as a result of fraudulent conduct upon the part of defendant in error. The chancellor found that the contract was not entered into under any mistake of fact; that plaintiffs in error had all the information regarding the device that defendant in error had; that the contract was not entered into by reason of any false or fraudulent representations made by defendant in error; that there was no intention that an express warranty was to be written into the contract to the effect that the device would enable plaintiffs in error to attach trunks to a specified number of different styles of automobiles without alteration, and that there was no evidence to sustain the contention of plaintiffs in error that payment under the contract was conditional upon the device enabling trunks to be attached to a specified number of styles of automobiles. The chancellor further found that the contract was canceled at the end of the first year by reason of the refusal of plaintiffs in error to make payments thereunder. The chancellor was warranted in making these findings.

The remaining issue of the case, and the one which demands consideration here, is involved in the contention of

plaintiffs in error that defendant in error must be held to have impliedly warranted that the patent for his device would prove valid; that it was not valid, and that there was, in consequence, failure of consideration, which made the contract unenforceable. In *Nicolson Pavement Co.* v. *Jenkins,* 14 Wall. 452, the court said: "An assignment of an interest in an invention secured by letters patent is a contract, and, like all other contracts, is to be construed so as to carry out the intention of the parties to it." If this be true of an assignment of an invention secured by existing letters patent, obviously there can be no rule that an agreement giving the right to use a device for which a patent has not yet issued is to be construed in any but the ordinary manner. Where it is contended that there has been a failure of consideration, here, as elsewhere, there must be a determination as to what it was that was bargained for, and if what was so bargained for has been received, the claim that the consideration failed cannot be upheld.

It is clear from the language of the contract here involved that the parties understood the granting of a patent to be an event which could and would take place only at some future time. Recitals were embodied setting forth the desire of plaintiffs in error to procure the exclusive right to manufacture the device from the date of the contract. The exclusive right to manufacture from that date was, in fact, conferred. It was further provided that the twenty-five cent royalty was in payment "for the exclusive right to manufacture and sell said bumper connections from the date hereof and during the period that shall elapse before said patent is granted." This latter proviso is particularly significant. Construing the language of this contract in accordance with its apparent meaning calls for the conclusion that what plaintiffs in error were bargaining for was the right to use the device, as a device, immediately, and that, so far as the issue of the present case is concerned, the granting of a patent therefor was an understood future event, which

was significant only in so far as the exclusive right of plaintiffs in error to continue to use the device after the granting of such patent was to be assured by its assignment. This record presents no question of payment for a patent. The situation is not, as contended by plaintiffs in error, "precisely the same" as though it were a sale of a patent outright and a suit for the price. At no time during the year, and before the patent was granted, was there interference with plaintiffs in error in their use of the device in question. Having specifically agreed to pay for such use before the granting of any patent upon the device they received that for which they bargained, and the fact that they did not exercise their right to it does not warrant them in repudiating the obligation, which was theirs so long as the contract remained in force. *Havana Press Drill Co.* v. *Ashurst,* 148 Ill. 115; *Rhodes* v. *Ashurst,* 176 id. 351; *Linington* v. *Strong,* 90 id. 556; *Myers* v. *Turner,* 17 id. 179.

A somewhat similar situation was presented in *Marston* v. *Swett,* 66 N. Y. 206. There, in consideration that plaintiff would not license others to use a certain patented appliance for stoves but would give defendants the exclusive right of user, defendants agreed to manufacture stoves with the appliance attached and pay plaintiff fifty cents for each stove manufactured and sold. Action was brought to recover license fees for the period between October, 1869, and January, 1872. The defense was that the agreement was void for want of a consideration, in that the patent was invalid. The court said: "The defendants desired the exclusive right to use the invention and hence made this agreement with the plaintiff. Under it they actually enjoyed the exclusive right which they sought and the plaintiff gave up all right to manufacture or to license others to manufacture. There was no fraud and the defendants got all they bargained for. During the time mentioned in the complaint they enjoyed all they could have had if the patent had been valid. Under such circumstances there was abundant con-

sideration to uphold the agreement whether the patent was valid or invalid. * * * Suppose there had been no patent whatever and the defendants had promised the plaintiff to pay him fifty cents upon every stove which they manufactured, in consideration that he would not during a given period manufacture any. The plaintiff having the right to manufacture and having abstained from its exercise, would anyone question that there would be a sufficient consideration to uphold this promise of the defendants? * * * It is the settled law of this and several other States that the invalidity of the patent is a defense to an action for the purchase price of the same on the ground of a failure of the consideration. It is therefore argued on behalf of the defendants that such an agreement as this for the exclusive use of a void patent, which is a less interest than the assignment of the entire patent, is without consideration. This conclusion is not altogether legitimate. Where one bargains for a patent right he expects a monopoly, and something which he can use, sell and deal in during the entire term of the patent, to the exclusion of everyone else. He bargains for something which he does not get and cannot enjoy if the patent is invalid. * * * But where one has a void patent which he can use and give others the right to use, and thus has an advantage which is valuable to him, and another bargains for that advantage which he surrenders and the other enjoys, the latter, during the time he is permitted to use the patent unmolested, gets just what he bargained for and cannot complain. When a case shall be presented where in good faith a void patent has been sold and the vendee has enjoyed the monopoly for the whole term of the patent, without molestation or liability to account to anyone claiming a superior right, it will be proper to consider whether, upon principle, there has been a failure of consideration and whether such a case should be controlled by the authorities above cited." In the present case, where the contract for exclusive use in so many words called for

payments during a period before the issuance of any patent and the relief granted extends only to payments thus due, the reasoning of the *Marston case* is obviously applicable and conclusive against the contention made.

Plaintiffs in error insist, however, that their contention is fully supported by *Nye* v. *Raymond,* 16 Ill. 153, and *Pratt & Co.* v. *Paris Gas Light·Co.* 155 id. 531. In the *Nye case* the action was upon a bond given for the payment of $1350, the bond reciting that it was for the purchase of a patent portable saw-mill, together with the right of Brown county for the same, together with four horses, ox wagon, etc. To the declaration the defendant filed special pleas averring a failure of consideration to the extent of $1000, in that the patent was invalid and that it would have been worth $1000 for Brown county. A demurrer was filed to these pleas. In holding that it was properly overruled the court said: "It was said in this case that the saw-mill would cut as much timber and was as valuable to the defendant as if it had been patented, or if patented and the plaintiff had no right to sell the patent, still the defendant had never been disturbed in the use of the mill and had thus enjoyed the full benefit of all he purchased. This is simply assuming that the mill and other tangible property were alone purchased and that nothing was agreed to be given for the patent, while the recitals of the bond show that the patent,·as well as the mill, constituted a part of the consideration of the purchase. We must hence assume that the price agreed to be given was more than would have been given for the visible property alone had it not been supposed to have been patented, and that at least to the value of the monopoly which the supposed patent would have been worth had it actually existed. This, in the plea, is asserted to be $1000, which is admitted by the demurrer." In other words, what was bargained for in the *Nye case* was not a mere device, alone, but a monopoly admittedly worth in itself a definite sum. The New York court said in the

*Marston case, supra,* that it was the settled law of that jurisdiction that the invalidity of a patent is a defense to an action for the purchase price of the same, and the decision in the *Nye case* shows that this court has taken the same position. The *Marston case* clearly indicates the difference between situations where the bargain is for a patent right at an agreed price, and situations where the bargain is for the exclusive right of user of a device under certain stipulated terms, such as in the *Marston case* and in the case at bar.

In the *Pratt & Co. case, supra,* the contract was entered into upon the faith of representations that the right to use a certain patent was not disputed. These representations were known by their makers, appellants, to be untrue at the time they were made. The contract gave appellee the privilege of using certain apparatus, and the right to use it was the sole consideration for assuming the liability to pay, upon which suit was brought. While the apparatus was being put in place notice was given by a third party that its use would infringe upon another patent and that a suit would be brought if it were used. At this stage appellee gave notice that it was unwilling to proceed further. Receiving a promise from appellants of a bond of indemnity against loss, appellee went ahead under the contract. This bond was never given. Suit for infringement followed, and appellee was forced to defend it, although appellants had agreed by the contract to defend such actions. The court said: "If appellants had no right to grant the use of such apparatus there was a total failure of consideration, and appellee was not bound, under its contract, to subject itself to liability for infringement upon the Springer patent, and might rightfully refuse further to be bound whenever it became apparent that the use of the apparatus sold appellee by appellants subjected it to suit for damages by the owners of the Springer patent. The apparatus was wholly worthless to appellee if it could not be safely and lawfully

used, and appellants having covenanted that it might be so used, and induced appellee to purchase it upon the representation and covenant that appellee should have the right to its full enjoyment and use, it follows, necessarily, that if appellants had no right to sell to appellee the privilege of using the apparatus there was a failure of the consideration for the promises of appellee." In the *Pratt & Co. case,* therefore, there was not only actual fraud, but the licensee found itself in the position of having purchased an active lawsuit. It had bargained for user without interference, and it not only could not, but did not, receive it under the grant which was actually made to it. The present case involves a different situation altogether.

Plaintiffs in error argue that there was a fiduciary relationship between them and defendant in error arising out of the fact that defendant in error was their employee, and they lay stress upon such alleged relationship as a reason for denying the relief granted. Even though there was a fiduciary relationship, its existence did not render the transaction void unless by reason of it undue advantage was taken of plaintiffs in error. (*Negley* v. *Ingleman,* 335 Ill. 52.) Under the state of the evidence disclosed by the present record it cannot be said that any such advantage was taken.

The judgment of the Appellate Court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*