## YOUNG v. RALSTON-PURINA CO.

### No. 10748.

Circuit Court of Appeals, Eighth Circuit.

Feb. 17, 1937.

98

Allen A. Herrick and Herschel G. Langdon, both of Des Moines, Iowa (D. Cole McMartin, of Des Moines, Iowa, on the brief), for appellant.

William Hossfeld, of Des Moines, Iowa (F. W. Lehmann, Jr., and W. B. Hurlburt, both of Des Moines, Iowa, on the brief), for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

The petition in this case presented a cause of action at law in two counts within the federal jurisdiction because of diverse citizenship of the parties. In the first count the plaintiff alleged that he had invented a certain toy movie theater for which he had a patent pending during the summer of 1934 and that during that summer he entered into negotiations with defendant to sell the use of the invention to the defendant; that defendant stated it was interested in utilizing plaintiff's idea on the basis of paying plaintiff a royalty on each toy theater used; that at defendant's request plaintiff disclosed all the details of his invention to defendant, and the defendant thereupon utilized the plaintiff's idea and invention and produced and distributed one million of said toy theaters and became thereby indebted to plaintiff for a reasonable royalty, figured at $12,500.

In the second count the allegations were "that on or about October 22, 1934, the defendant offered to purchase the use of plaintiff's invention to use said toy theatre idea" at a certain royalty price; that the plaintiff accepted the offer; and that the "defendant did produce and utilize * * * one million of said toy theatres and there-by became indebted to plaintiff in the sum of $12,500.00."

There was a prayer for judgment in the sum of $12,500, with interest and costs.

The defendant answered that it did cause toy movie theaters to be made and distributed as a premium during the latter part of 1934 and the early part of 1935, but the toys did not embody the plaintiff's invention and they were not made or distributed pursuant to any contract express or implied between plaintiff and defendant; that the structure of the toy movie picture theater was old and well-known to the public prior to plaintiff's alleged invention; and that the structure of those made and distributed by defendant was fully illustrated and described in six certain letters patent issued to inventors other than the plaintiff and identified in the answer.

At the conclusion of all the testimony offered on the trial of the case the defendant moved to direct a verdict in its favor, the motion was sustained, and judgment of dismissal at plaintiff's costs was entered on the verdict. The plaintiff has appealed.

It appears that the plaintiff is a commercial artist, and that prior to the summer of 1934 he had invented and applied for a patent upon a toy movie theater and carton combined; that is, "a carton which could be used to contain merchandise for storage and shipping and display and, which, after the removal of the merchandise contents, could be folded and adjusted to form a toy movie theatre." His agent, L. W. Hoppe, called upon a purchasing agent of the defendant, a Mr. Ledbetter, in June, 1934, and tried to interest him in the plaintiff's article with a view to making a sale to the defendant. Mr. Hoppe's idea was that the defendant could use the plaintiff's carton as a container for its product. Mr. Ledbetter declined to consider it for that purpose. But a method of advertising used by the defendant, Ralston-Purina Company, at that time was to send a premium by mail to any of its customers who would tear the top off the box in which defendant's product was sold and return the top to the defendant, and, after some discussion, it appeared to Mr. Hoppe and Mr. Ledbetter that a toy movie theater that could be made for a small price and inclosed in a mailing envelope would make a suitable premium to be given away in such an advertising campaign.

Accordingly, the plaintiff endeavored to sell the defendant toy movie theaters for such use as advertising premiums. He made up and submitted a model of the toy theater that he wanted to sell (Exhibit 4), but it appeared that such a toy would cost too much. Mr. Hoppe testified that Mr. Ledbetter said that he could not pay over five cents. "He (Mr. Ledbetter) said if you can produce one of these for five cents I will buy it." The plaintiff then made up and submitted another model toy theater (Exhibit 7) of the same construction but smaller and apparently of lighter stock, and on October 19, 1934, he submitted to defendant a formal proposition in writing based on Exhibit 7 proposing to furnish to the defendant two million each of his envelopes, film strips, and die-cut toy theaters on certain specified terms and conditions (the price closely approximating five cents), and the defendant declined the proposal.

Mr. Hoppe testified, however, that afterwards, on October 22d, Mr. Ledbetter made a definite oral offer to pay the plaintiff a royalty of 1½ cents a theater (up to 500,000 theaters) for the use of the toy theater which had been submitted by the plaintiff and that the defendant accepted the offer and Mr. Hoppe orally communicated the acceptance to Mr. Ledbetter before the same was withdrawn. Mr. Ledbetter denied making any such oral offer. There were no further transactions or negotiations between the parties.

It appears that the defendant made inquiries concerning toy movie theaters and prior art and that there were various such devices known and patented prior to the plaintiff's invention. In general, they were made of cardboard to be folded into box shape. The front of the box would be marked with a design of a stage and within the design there would be a picture aperture or sight opening. A long strip of paper bearing a series of pictures and called a film was attached at its ends to rollers journaled in the cardboard and could be wound back and forth from one roller to the other so that the pictures on the film would come into view, one after the other, through the sight opening in front. Such devices are shown and illustrated in the patent No. 269,764, issued to Whitelaw December 26, 1882, patent No. 1,917,977, issued to Kalert July 11, 1933, British patent No. 237,957, issued to Batchelor & Co., April 30, 1924, and patent No. 1,237,161, issued to Bowen August 14, 1917.

Mr. Ledbetter testified that he had "been out" to obtain a price on the making of toy theaters and came in contact with other theaters that had been made and sold previously and that after the negotiations with plaintiff had come to an end he collaborated with the "cereal committee" of the defendant and its "legal department" and others, having the prior art before them, and ultimately the defendant had ordered and caused 300,000 toy theaters to be made up (exemplified by Exhibit 9), of which 289,143 had been distributed at the time plaintiff's petition was filed. Mr. Ledbetter's testimony is positive that the defendant did not intend to embody the plaintiff's patent in the structure which it procured and distributed. He said, "I was sure that we had the exclusive right to manufacture this theatre (Exhibit 9). That is what I was advised by our legal department."

The plaintiff tore off the tops from some of the boxes in which defendant's products were sold and sent the tops in to the defendant and procured examples of the toy movie theaters which defendant had had made and was distributing. Thereupon, the plaintiff's attorney, with the defendant's theater in mind, drew up a claim numbered 17 and added it to the plaintiff's application for patent then pending in the patent office. The added claim was intended to cover, and did cover, the defendant's structure, and it was ultimately allowed by the Patent Office along with plaintiff's other sixteen claims and patent issued to the plaintiff on March 26, 1935.

If the suit had been for damages for patent infringement, defendant's infringement would appear as to claim numbered 17 (assuming validity of the claim) because the plaintiff had the claim drawn upon defendant's own theater, but both parties insist (and it is apparent) that the suit is not one for patent infringement. Neither does the plaintiff claim to be entitled to recover anything from defendant for disclosing to defendant the idea of using a toy movie picture theater as a premium to be given away in the defendant's advertising campaign. His only claim is that the theater which he had invented and exhibited to defendant was taken and used by defendant upon an express or implied promise to pay a royalty for the use of it.

The trial court had the structure which plaintiff had offered to defendant and the defendant's structure both before it for

comparison and concluded, on making such comparison, that the defendant had not used or embodied the toy movie picture theater which plaintiff had submitted to defendant in the structure which defendant caused to be made up and distributed and, therefore, that defendant could not be held for breach of a contract, express or implied, to pay a royalty for using the plaintiff's theatre.

■ We assume, without deciding, that an unpatented invention, such as claimed by plaintiff, might be the subject of a contract express or implied for payment of a royalty for using it, and that a cause of action might be based upon the breach of such a contract. Acme Chair & Metal Crafts Co. v. Northern Corrugating Co., 209 Wis. 8, 243 N.W. 415, 244 N.W. 582; Myers v. Gerhardt, 344 Ill. 620, 176 N.E. 713; Burton v. Burton Stock-Car Co., 171 Mass. 437, 50 N.E. 1029; Ingraham v. Schaum, 157 Pa. 88, 27 A. 404; Marston v. Swett, 66 N.Y. 206, 23 Am.Rep. 43; Ullman v. Thompson, 57 Ind.App. 126, 106 N.E. 611; Hamilton v. Park & McKay Co., 112 Mich. 138, 70 N.W. 436. Although, as quoted by this court in Lueddecke v. Chevrolet Motor Co. et al. (C.C. A.) 70. F.(2d) 345, 349: "Without denying that there may be property in an idea or trade secret or system, it is obvious that its originator or proprietor must himself protect it from escape or disclosure. If it cannot be sold or negotiated or used without a disclosure, it would seem proper that some contract should guard or regulate the disclosure; otherwise, it must follow the law of ideas, and become the acquisition of whoever receives it."

■ But we agree fully with the trial court that no such case of liability on a contract to pay royalty for such use could be made out by the plaintiff unless there was proof that the article which the defendant used was the same as that offered to it by the plaintiff. We also agree with the trial court that there was no proof that the defendant did make use of the toy theater which had been submitted to it by the plaintiff.

There is no dispute or uncertainty as to what the plaintiff offered to the defendant. It was a toy movie theater exemplified by the physical exhibits 4 and 7 before the trial court and now before this court. It was illustrated by drawings, Exhibit 6A, and it was represented by plaintiff in his attorneys' letter submitted to defendant "that

the form of theatre which your representative has been discussing with Ralston (Purina Company) is exactly covered by our allowed Claim 6. * * *"

The toy movie picture theater so identified and which was the subject of the negotiations between plaintiff and defendant, in addition to having the old elements general to such toy theaters, was constructed with a false bottom into which the bottom ends of the film rollers were inserted so that the theater could be placed on a table and the rollers would not protrude out the bottom, and flaps were provided in which slots were cut through which the film passed and which guided the film straight across the sight opening horizontally, and, at the same time, held the film uniformly against the sight opening so that, as the film was wound from one roller to the other, it would always pass in the same relative position to the sight opening.

On the other hand, the toy theater structure put out by defendant (also completely identified) embodied the general elements of the old toy theaters, namely, the box structure with the sight opening in the front and rollers upon which to roll the film back and forth so that the film would pass across the sight opening. But it did not embody the false bottom of the plaintiff's device, nor the slotted film guides, which were the novel elements included in the first sixteen claims of the plaintiff's invention, all of which was apparent upon comparing the two structures.

The case may be put thus: The defendant (according to plaintiff) said to the plaintiff, "I will use your toy theatre which you have submitted to me and pay you 1½ cents for each such theatre I produce," and plaintiff accepted the offer. Then the defendant determined not to use plaintiff's toy theater. Instead of doing so, it made up from old art and its own devising another toy theater which, on advice of counsel, it believed was different from that submitted by the plaintiff, and which was in fact different. Manifestly, the defendant never promised or intended to pay a royalty on the toy theater of its own devising, and we know of no rule of law by which such a promise could be imputed to it.

It has been contended for appellant that there was some "expert" testimony that the defendant's toy theater embodied a mechanical equivalent of one of the elements of plaintiff's invention and that

there was, therefore, a question for the jury whether the defendant had used the plaintiff's invention.

Two patent attorneys and the plaintiff testified as experts. They did not question that the claim numbered 17 of plaintiff's patent was broad enough to cover the defendant's structure, because the claim had been drawn on defendant's structure. But it is manifest that the defendant did not enter into any contract with plaintiff with reference to any structure made under that claim. The claim was not devised until after the negotiations between the parties had ceased and no contract could be imputed to defendant in regard thereto. There was no testimony that defendant's structure embodied the false bottom feature of the plaintiff's invention. But the defendant's theater has slotted tabs at one end which fold inwardly and the roller fits into the slots, and the plaintiff and the patent attorney Bair gave opinion testimony that the slotted film guides of the plaintiff's patent were mechanical equivalents of the slotted tabs used in the defendant's structure. They were contradicted by the expert for defendant. We think this testimony of the witness Bair is inconsistent with the testimony he gave to the effect that defendant's theater was not covered by any of the first sixteen claims of plaintiff's patent and by his testimony that the slotted tabs of defendant's structure do not perform the function of the plaintiff's slotted film guides of holding the film paper against the inside of the front wall, but we are convinced that there was no issue on the claimed question for the jury.

Comparison of the physical structures demonstrates as a physical fact that the slotted tabs used in the defendant's structure at one end are not equivalents of the plaintiff's film guides. The slotted tabs neither perform the service of affording any substantial guide to the film nor do they tend to perform the function of holding the film against the inside of the front wall. They do tend to hold one of the film rollers in its proper position. On the other hand, the film guides of plaintiff's structure are positive guides which inclose the film and position it in the sight opening space and against the inside of the front. There is no substantial equivalence.

When it appears, in a patent infringement suit, that extrinsic evidence is not needed to explain the terms of art involved and the court is able, from mere comparison, to comprehend what the invention described in a patent is, and, from a mere comparison of the structures, to determine whether one device infringes on another, the question of infringement or no infringment is one of law. Singer Mfg. Co. v. Cramer, 192 U.S. 265, 275, 24 S.Ct. 291, 48 L.Ed. 437; Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 36, 50 S.Ct. 9, 74 L.Ed. 147; Market Street Cable Ry. Co. v. Rowley, 155 U.S. 621, 625, 15 S.Ct. 224, 39 L.Ed. 284; Edward G. Budd Mfg. Co. v. C. R. Wilson Body Co. (C.C.A.6) 21 F.(2d) 803, 805; Hurin v. Electric Vacuum Cleaner Co. (C.C.A.6) 298 F. 76. The principle is most plainly applicable here.

Here the plaintiff's claim was that the structure which defendant put out was the particular structure concerning which the parties had contracted. That claim could not be made out by a showing merely that defendant had, through the use of mechanical equivalents, infringed upon some claim of a patent afterwards granted to the plaintiff. It could only have been made out by proof according to the allegations of the petition—of use of the theater disclosed by plaintiff and which the defendant promised, expressly or impliedly, to pay for using. The proof entirely failed to sustain the allegation of the petition that the defendant used the movie picture theater disclosed to it by the plaintiff.

In view of the foregoing conclusion, the other points argued for the appellant need not be discussed.

Affirmed.