**DU BOIS PLASTIC PRODUCTS, Inc., a New York Corporation, Virginia I. DuBois, Rita C. Sterne, Eileen Silbert, Florence E. Taylor and Lauriene T. Holzworth, Plaintiffs and Counterclaim Defendants,**

**v.**

**UNITED STATES SAFETY SERVICE CO., a Missouri Corporation, Defendant and Counterclaimant.**

No. 10574.

United States District Court
W. D. Missouri, W. D.
June 21, 1958.

Thomas E. Scofield, Kansas City, Mo., for plaintiffs and counterclaim defendants.

C. Earl Hovey, Kansas City, Mo., for defendant and counterclaimant.

RIDGE, District Judge.

This is an action for alleged infringement of specified claims of three (3) letters patent, numbered 2,368,750, issued February 6, 1945; 2,406,998, issued September 3, 1946; and 2,422,534, issued June 17, 1947, relating to "Eye Shields". Plaintiffs Virginia I. DuBois, Rita C. Sterne, Eileen Silbert, Florence E. Taylor and Lauriene T. Holzworth are the joint owners of all three patents. Plaintiff DuBois Plastic Products, Inc. is their exclusive licensee.

Defendant, although denying infringement, admits that since a date subsequent to the issuance of the aforementioned letters patent it has been, and presently is, making and selling, within the jurisdiction of this Court and elsewhere, goggles, commercially known as "Airflow Saf-I-Flex Series 29," of the kind plaintiffs allege to be infringements of the claims of their patents; that it is actively engaged in obtaining customers and developing markets for present and future sales of such goggles and that it intends to continue to do so. As affirmative defenses, defendant asserts that each of the claims of the letters patent placed in suit is invalid because of prior art and use by others. By way of counterclaim, defendant seeks declaratory judgment under Section 2201, Title 28 U.S. C.A., on the ground that none of the patent claims in suit can be read upon or cover its "Airflow Saf-I-Flex Series 29" goggles.

■■ Defendant has filed motion for summary judgment in respect to the issues raised by its counterclaim. The sole issue presented thereby is whether as a matter of law each of the claims in suit can be read upon or made to cover defendant's goggles. If that proposition is negatively determined as to any or all claims so put in suit, then infringement could not here be present.

"When it appears, in a patent infringement suit, that extrinsic evidence is not needed to explain the

terms of the art involved and the court is able, from mere comparison, to comprehend what the invention described in a patent is, and, from a mere comparison of the structures, to determine whether one device infringes on another, the question of infringement or no infringement is one of law." Young v. Ralston-Purina Co., 8 Cir., 1937, 88 F.2d 97, 101.

Copies of the letters patent and the file wrapper pertinent thereto are before the Court. The devices patented thereby are of simple and obvious construction. They relate to the lens and rim portion of eye shields. Primarily, the specification and claims thereof are concerned with the particular details of construction and interlocking fastening structure for securing a rim member to a lens member. Neither the language used in describing the patents, the claims thereof, nor the drawings appear complex or technical in nature. Specimens of the accused goggles are likewise before the Court. The characteristics thereof, their mode of construction and means of fastening the rim member to the lens thereof are obvious from a mere examination. It is, therefore, possible to understand the nature of the patented inventions here to be considered and determine whether or not all the elements and means set forth in each of the patented claims, or mechanical equivalents thereof, may be read upon the alleged infringing devices, or whether the elements of the latter are produced by different modes of operation, without extrinsic evidence being adduced regarding such matters. Under these circumstances, summary judgment appears to be a proper remedy "upon all or any part" of the claims in suit. Rule 56(a), 28 U.S.C.A.; Steigleder v. Eberhard Faber Pencil Co., D.C.Mass.1948, 81 F.Supp. 143, affirmed 1 Cir., 1949, 176 F.2d 604. Summary judgment may, under proper circumstances, be entered in a patent case on issue of want of invention, novelty, and infringement, even if the patent is valid, if "reasonable men would find no difficulty in distinguishing between the involved" devices and the accused one. Rothe v. Ford Motor Co., 102 U.S.App.D.C. 331, 253 F.2d 353.

■ Following service on it in this action, defendant filed a motion for a more definite statement, seeking, among other things, "a statement and designation of the patent claim or claims of each of the patents in suit with respect to which plaintiffs charge infringement in the complaint." Without awaiting formal ruling by the Court upon said motion, plaintiffs filed a more definite statement of complaint, designating the claims relied upon in this action to be: Claims 1, 2, 3, 4 and 5 of Patent No. 2,-368,750; Claims 1, 2, 4, 5, 7, 8 and 9 of Patent No. 2,406,998; and Claims 1, 2, 3 and 6 of Patent No. 2,422,534. Plaintiffs have now filed an "amendment to the more definite statement of complaint" and seek the Court's approval of the withdrawal from this action of Claims 8 and 9 of Patent No. 2,406,998; and Claims 1, 2 and 6 of Patent No. 2,-422,534. Defendant-counterclaimant opposes approval of the withdrawal by plaintiffs of any of the claims previously designated and alleged as being infringed by it on the ground that it is entitled to the protection of a judgment of non-infringement with respect to said claims. Notwithstanding defendant's opposition, we believe that leave should be granted plaintiffs to file withdrawal from this action of the above-referred-to claims, for manifestly plaintiffs' disclaimer of non-infringement thereof no longer presents any justiciable issue between the parties in respect thereto. In light of such written disclaimer, there is no reason for conditioning leave to withdraw such claims, with prejudice or otherwise. The legal effect of the withdrawal is a disclaimer of infringement of said claims by defendant, and that fact standing of record will prevent plaintiffs from hereafter asserting future infringement by defendant of any matters previously put in issue by the pleadings in respect to said claims.

The instant motion does not raise any question as to the novelty or validity of the patents in suit. Hence the aforesaid letters patent *stand prima facie* valid; and the only issue now before the Court is whether infringement may be declared from a mere reading of the claims put in issue on the accused goggles. Tersely stated, the inventive combination claimed for the above patents is the "concept of a frame and lens to detachably hold it in place and wherein the same means function to retain the frame in its assembled position about the lens." (Ex. 9, p. 17.) The scope of the patents may best be illustrated by Claim 2 of Patent No. 2,368,750, as a:

> "loop shaped open-end rim member made of a strip of plastic material shaped at its inner edge to fit the contour of the face and provided adjacent its outer edge with an internal groove and at its opposing ends with hook-like elements, and a lens member of transparent material detachably fitted in said rim member and having elements therein for registering engagement with the companion hook-like elements of the rim member to retain the rim and lens members in assembled relation."

Transparently, such a patent monopoly is a combination structural entity.

In determining whether such a combination claim may be read on the accused goggles, we must keep in mind certain fundamental rules of law in relation to patent monopoly. It is axiomatic that the claims of a patent measure the scope of the patent monopoly and as affecting the scope of a patent, where the invention claimed has been limited by Patent Office and such limitation accepted by patentee, as disclosed by the file wrapper, a patent claim will not be deemed to include any of the excluded matter. Smith v. Mid-Continent Inv. Co., 8 Cir., 1939, 106 F.2d 622. As to infringement of a combination claim, generally speaking, every element claimed is deemed to be material thereto, and the omission of one element or ingredient of a structural combination covered by any claim of a patent averts any charge of infringement based on that claim. Getty v. Kinzbach, 5 Cir., 1941, 119 F.2d 249; Etten v. Kauffman, 3 Cir., 1941, 121 F.2d 137; Wichita Visible Gasoline Pump Co. v. Clear Vision Pump Co., 8 Cir., 1927, 19 F.2d 435; Measuregraph Co. v. Grand Rapids Show Case Co., 8 Cir., 1928, 29 F.2d 263. Also, a patent for a combination of separate parts does not cover each part when taken separately. Rowell v. Lindsay, 113 U.S. 97, 5 S.Ct. 507, 28 L.Ed. 906. That the third paragraph of Section 112 of the Patent Act of 1952 (35 U.S.C.A. § 112) provides:

> "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

In Stearns v. Tinker & Rasor, 9 Cir., 1957, 252 F.2d 589, 597 the Court construed that part of Section 112, supra, "to mean that while an element in a claim for a combination may be expressed as a means or step for performing a function without recital of structure, material or acts in support thereof; the structure, material or acts must be described in the specification, and if so described, the claim will be construed to cover that which is described and the equivalents thereof." (loc.cit. 597–598). However, where it appears that a patent as granted is for an invention of limited scope, in a crowded art, the question of what is equivalent must be carefully considered and where the original claims of the patentee were narrowed to prevent rejection by the Patent Office, the doctrine of equivalents cannot enlarge the scope of the patent restricted by the amendments. McKays Co. v. Penn Electric Switch Co., 8 Cir., 1932, 60 F.2d 762. Under the circumstances, the claims of a patent are to be interpreted not only in light

of the specifications and drawings but also with reference to the file wrapper. Bobertz v. General Motors Corp., 6 Cir., 1955, 228 F.2d 94.

During the prosecution of their application in the Patent Office for Patent No. 2,368,750, plaintiffs cancelled claims sufficiently broad in scope to cover any goggles constructed of a rim and lens member where "the rim is provided with a groove adapted to receive the edge of (a) face plate, and hooks formed on the ends of the rim for engaging notches formed on the side of the said plate to hold the rim and face plate in assembled relation" because the Examiner held that "(n)o invention would be involved in providing either the Wilen (Wilen, et al., 2,182,104) or Boult (Boult (Br.) 20,678) goggles with a hook member for retaining the lens in position in view of the teaching in the Swiss patent" (Jenny, et al. (Sw.) 97,748). (Ex. 9, p. 10.) The cited prior art relates to goggles where the rim member is adapted to fit over the nose of the user. At one point in the prosecution of the application, from which the above patent matured, patentee stated:

"* * * in neither patent (i.e. cited prior art) is the concept of a frame and lens shown where the frame is in reality wrapped about the lens to detachably hold it in place and wherein the same means functions to retain the frame in its assembled position about the lens. Furthermore, neither of these patents discloses an open-ended frame or rim member having the characteristics and structural features pointed out in these claims." (Ex. 9, pp. 17 & 18.)

and that, at another point in the prosecution, it was stated for the patentee:

"Claims 6–9, inclusive, (Claims 2, 3 and 4 of the Patent) substituted for Claims 1, 2 and 3 (of the application) are believed to clearly recite the distinguishing features of applicant's invention over the art of record, none of which disclose *a rim member terminating at its open end*

in means for interlocking engagement with companion means in the lens member for retaining the parts in assembled relation. (Italics added; see Ex. 9, p. 14.)

In their prosecution of the application for Letters Patent No. 2,406,998, after cancelling similar certain broad claims because of reference cited by the Patent Office Examiner against that application, it is noted that plaintiffs referred to their claimed invention thus: "Unlike this reference applicant's rim member is open-ended and another distinguishing feature over the reference is that applicant's lens member is shaped to fit the contour of the nose, whereas in the Swiss patent, for example, the rim member is shaped to the contour of the nose." (Ex. 10, p. 17.) As to Patent No. 2,422,534, in the application therefor plaintiffs called special attention to the fact that in this invention the "rim member is open adjacent to the wearer's nose and this feature makes for its flexure to enable the lens member which is also flexible, to be snapped into and out of the retaining groove in the rim member." (Ex. 11, p. 16.) There is more in the file wrapper of each of the applications for the patents here involved that we think should be considered in weighing the interpretation to be given to the claims of the individual patents. Some such will be hereafter set forth. Reference to the foregoing is especially made because of the contentions of the parties as to whether "an open-ended rim member" may be read as an element on the accused goggles, under the patent claims put in issue.

Great stress is placed by the parties on the fact that most of the combination claims here considered make call for an "open-ended rim member * * * secured in position" to a lens member by "angularly positioned slots" in the latter and "hooks formed at the ends of (a) strip" of plastic, or by "longitudinal slots" in the rim and "bosses" on the lens member. Plaintiffs assert that the call for such elements of their patents merely distinguishes its combination

claims from a rim member formed of a continuous endless loop as exemplified in the prior art cited against their applications in the Patent Office; and that such expression does not refer to a defined space across the nose of its device. Thus plaintiffs claim any "open-ended" strip of plastic, etc. which wraps around a lens member and is fastened thereto by a "notch" or "slot" in the latter and "hooks formed at the ends of said strip" is infringement of its patent claims under Patent No. 2,368,750.

The accused goggles may be described thus: they are of a two-piece assembly and have an interlocking structure for interconnecting the frame and the shield. As commercially assembled, the goggles have a plurality of notches in the periphery of the lens to receive a like number of wedge-shaped ribs formed integrally within a groove of the frame, one of which bosses or ribs is located near to, but not at the ends of the groove, and fit into notches on each side of the nose cut-out in the lens, so that the rim circumscribes the lens and the opposed ends thereof abut over the nose cut-out in the lens, in assembled position.

Before considering whether the claims in suit may be read on defendant's accused goggles, we first declare that in our opinion it here clearly appears that the scope of the patents in suit is narrow and that the range of equivalents for plaintiffs' claimed inventions appears very restricted. This because the invention is a limited one and the patents thereof came into a densely crowded field, where form of the patented devices appears to be an indispensable thing. Cf. Frick Co. v. Lindsay, 4 Cir., 1928, 27 F.2d 59; McKays Co. v. Penn Electric Switch Co., 8 Cir., 1932, 60 F.2d 762. In light of the disclosures in the file wrappers of plaintiffs' patents, the Court is of the opinion that the "open-ended" assembly of the inventions here considered, and the locking means by which the rim member accommodates the lens member in assembled position, is about all that plaintiffs can claim as a patent

monopoly under their patents. In other words, it appears that the novelty of the patents here in suit is restricted to the locking method of the rim and lens in the form that plaintiffs claim for their devices as assembled.

From the file wrapper, specifications and drawings of the patents here considered, it appears that the claims in issue make call for a specific form reached by interlocking means on elements at certain stated locations to produce that form. In consequence thereof, and the prior art cited by the Patent Office Examiner against these patents, the cancellation and amendment of claims as originally made and substitution of other claims therefor before the claims in suit were allowed, we believe express limitations were created which in the Court's opinion must be considered in any reading thereof on defendant's accused structures. This is made manifest by the report of the Examiners in the Patent Office in respect to each such application.

As to Patent No. 2,368,750, the Examiner declared that "no invention would be involved in providing either the Wilen or Boult goggles with a hook member for retaining the lens in position * *." (Ex. 9, p. 10.) As to Patent No. 2,406,-998, attention was specifically directed to the proposition that "an interlocking means," as broadly called for in the original claims of that application, "means nothing more than any means to fit the rim member tightly about the edge of the lens. An ordinary groove receiving a lens as in Wilen, et al. comprises complementary parts, i.e. the groove and lens edge" and such broad claims were accordingly rejected. (Ex. 10, p. 19.) Thus it would seem that as to the claims of those two patents as allowed, they should be interpreted to make call for the specific interlocking means on the form of the combination structure described by the patentee and that such claims cannot be read so as to enlarge them to cover other interlocking means for detachably securing a lens to a rim member in a

structural form not described in the patent.

In Midland Steel Products Co. v. Clark Equipment Co., 6 Cir., 174 F.2d 541, 545, the Court quotes from D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 269 F. 236, 240, 241:

"* * * where the claim defines an element in terms of its form, material, location or function, thereby apparently creating an express limitation, where that limitation pertains to the inventive step rather than to its mere environment, and where it imports a substantial function which the patentee considered of importance to his invention, the court cannot be permitted to say that other forms, which the inventor thus declared not equivalent to what he claimed as his invention, are nevertheless to be treated as equivalent, even though the court may conclude that his actual invention was of a scope which would have permitted the broader equivalency."

█ It must be kept in mind that plaintiffs' patent claims do not cover separately the parts of the combination which constitute their patent monopoly. Each of them are combination product claims, and must be read in the light of the invention disclosed to the Patent Office and the public by the verbiage used to state the novelty thereof. "Having finaly drawn (their) claims narrowly to avoid the prior art and obtain allowance of the claims, plaintiffs cannot (now) attribute a broader construction to the words of (their) claim" than a literal interpretation thereof discloses. Bobertz v. General Motors Corp., D.C.Mich.1954, 126 F.Supp. 780, 783. When a literal interpretation is given to the words of these patent claims and particularly the call for an "open-end rim member made of a strip of plastic"; "an open-ended flexible rim member"; or, an "open-ended rim * * * open at that portion thereof adjacent the wearer's nose," one can only deduce, in the light of the file wrappers, specifications and drawings of

these patents, that the elements so described limit the scope of these patents. To speak of "open-end" or "open-ended" in relation to a mere "strip of plastic" is formlessness; immeasurable and not coherently unifiable. However, when a claim is made in reference to such a strip, formed as an "open-ended rim member" fitted around the periphery of another element, it is readily conceived when the form is made perceptible. Such a call "discloses", as plaintiff said it did before the Patent Office Examiner, "an open-ended frame or rim member having the characteristics and structural features pointed out in (the) claims," (Ex. 9, p. 18) and distinguishes that element of these patent claims from abutting ends, or a contiguous loop of plastic. Consequently, we hold that "open-ended rim" and like calls made in the claims of these patents are, under the circumstances here considered, to be read in relation to the assembled device of defendant and not in respect to the separate elements of which it is constructed.

With the foregoing in mind, we now undertake to read the claims in suit on the devices (Ex. 4 to 8, inclusive) accused as infringements thereof.

█ Claim 1 of Patent No. 2,368,-750 calls for "angularly positioned slots in (the) lens member adjacent said cutout portion" and "hooks formed at the ends of strip, which hooks are adapted to cooperate with said slots * * * to assist in locking the lens member and rim member in assembled position." The accused goggles do not include any such "slots" positioned in the lens thereof nor hooks at the end of the strip of plastic, etc. corresponding with said slot, as called for in this claim. There is a single cut-out in lens of the accused devices that provides two angular shoulders positioned on both sides of the cutout, and the rim is fastened to the lens by two bosses in a groove which are a defined distance from the ends of the strip forming the rim, and, when in juxtaposition to the lens, sit in a large cut-out or notch which is sufficient to en-

tertain the abutting ends of the rim across the nose-piece.

Claim 2 of Patent No. 2,368,750 calls for an "open-ended rim member made of a strip of plastic." We think the only proper interpretation to be given to that element of this patent, in light of what is said above, is that "open-ended" is meant to be in relation to the assembled patented device and not in respect to the manufacture of a flat lineal strip of plastic, etc. which is subsequently wrapped around a flat lens member, as plaintiffs apparently contend. What is just said in regard to the above claims is applicable to Claims 3, 4 and 5 of Patent No. 2,368,750. As above noted, in considering Claim 1, the holding elements for the rim and lens of defendant's goggles are not the same or equivalents of those called for in plaintiffs' patent claims, and the "open-ended rim member" is not to be found on defendant's goggles. Therefore, none of the claims of plaintiffs' Patent No. 2,368,750 read on the goggles here accused; consequently infringement is not established.

As to Patent Number 2,406,998, and Claims 1, 2, 4, 5 and 7 thereof, it is of interest to note than in the file wrapper of this patent the following statements were made on behalf of the patentee:

"It will be noted in applicant's construction that the rim member is *open-ended* * * *." (Italics added. Ex. 10, pp. 16–17.)

"Unlike this reference (referring to a prior art patent cited against the application by the Patent Office), applicant's rim member is *open-ended* and another distinguishing feature over the reference is that applicant's lens member is shaped to fit the contour of the nose, whereas in the Swiss patent, for example, *the rim member is shaped to the contour of the nose.*" (Italics added. Ex. 10, p. 17.)

"As regards the Thompson patent (referring to another patent cited against the application by the Patent Office), it is believed that ap-

plicant's claims clearly distinguish therefrom and in this connection some of applicant's claims have been amended to distinguish from *any boss construction* which may be found in this patent * * *." (Ex. 10, p. 17.)

"Claim 19 (referring to the claim so numbered in the application, from which Claim 7 of the patent ultimately resulted) * * * is built along the lines of Claim 11 (of the application) by inserting in line 4 thereof that the 'rim member' is open at its *lower edge in the vicinity of the wearer's nose* * * *. As now presented, this claim is believed to patentably distinguish from Wilen, et al. who lacks the structural features required of the claim and particularly the rim member being open at its lower edge in the vicinity of the wearer's nose * * *." (Ex. 10, p. 27.)

Claim 1 of Patent 2,406,998 calls for "an open-ended flexible rim member." It is noted that the "open-ended" limitation of this claim was added by amendment to original Claim 5 of the application which was, before the addition of such limitation, rejected by the Patent Office on the prior art. (See Ex. 10, pp. 5, 12, 15.) The rim of defendant's goggles is, of course, provided with abutting, rather than open, ends. The claim further calls for "longitudinal slots in said rim member." Manifestly, there are no longitudinal slots in the rim of defendant's goggles. The claim also calls for "bosses" on the lens "adapted to engage the slots of said rim member" and requires that such bosses be "hook-shaped in the plane of the lens member." Defendant's accused goggles have no longitudinal slots in the rim and clearly provide no slot-engaging bosses on the lens, as required by the claim.

Claim 2 of said patent calls for "longitudinal slots in said rim" and for "bosses on said lens member adapted to engage the slots of said rim member" and "terminating in hooks."

Claim 4 calls for "an open-ended rim member" and for "interlocking means" of which certain are required to be "hooklike in shape to prevent outward distention of the *open portion* of the rim member relative to the lens member." (Italics added.)

Claim 5 calls for "slots formed in the rim member" and for "bosses formed on the periphery of the lens member" with "certain of said bosses terminating in hooks."

Claim 7 calls for a "rim member * * open at its lower edge in the vicinity of the wearer's nose" and for "interlocking boss and slot means" in the lens and rim for "preventing outward displacement of the *open* lower edge of the rim member relative to the lens member." (Italics added.)

In view of patentee's references to "open-end" rim member and specifically excluding thereby a contiguous "rim member * * * shaped to the *contour* of the nose"; —"longitudinal slots" in a rim wherein "bosses" on a lens are "adapted to engage the slots of said rim member" as an interlocking means to escape the "boss construction" found in the prior art, the claims of this patent cannot be enlarged to read on defendant's goggles and, therefore, infringement is not here established from the verbiage of the above claims of Patent No. 2,406,- 998.

Patent No. 2,422,534 discloses and describes an improved eye shield where the rim member is "open at its bottom * * to bridge the nose of the wearer and the lens member is provided with an outwardly-distended conical-like portion at its lower medial edge (that) fits over the nose of the wearer." Only Claim 3 of this patent remains in issue. Said claim makes call for an "open-ended rim * * open at that portion thereof adjacent the wearer's nose." In the file wrapper of this patent the following statement was made on behalf of the patentees to secure allowance of their claims after certain original claims were rejected by the Patent Office:

"The specification has been amended to bring out the fact that the frame or rim member is made of a really thin flexible plastic material which is capable of being bent or flexed to the shape shown in the drawings. It will be noted further that this rim member *is open adjacent the wearer's nose* and this further makes for its flexure to enable the lens member which is also flexible, to be snapped into and out of the retaining groove in the rim member." (Ex. 11, p. 16.)

And to avoid the prior art cited against their application patentees further stated:

"* * * from the prior art * * * it is submitted that there is no single patent which discloses applicants' *form of rim* member nor the feature of the one-piece lens detachably fitted therein and wherein the lens member is convex in shape." (Ibid.)

When Claim 3, supra, is interpreted in light of the disclosures made by patentees to the Patent Office, and by the specifications and drawings of the patent claims as allowed, it is manifest that the "open-ended rim" describes a rim that does not wholly sheathe a lens member, and that such a rim is one that does not abut, touch, or cojoin around a lens. As such element is called for in Claim 3, it can only relate to the form and function of those elements and create an express limitation of the invention as allowed. The structure thus required by Claim 3, supra, is not to be found in defendant's accused goggles.

"It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with reference to claims that have been cancelled or rejected and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent." Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220, 61 S.Ct. 235, 239, 85 L.Ed. 132.

From what is above said, we think that defendant's motion for summary judgment on its counterclaim should be granted as prayed. Counsel settle judgment entry accordingly.

It is so ordered.