## RILEY STOKER CORP v JEFFREY MANUFACTURING CO

Ohio Appeals, 2nd Dist, Franklin Co

No 2982. Decided March 22, 1939

Vorys, Sater, Seymour & Pease, Columbus, for plaintiff-appellant.

W. Wilson Carlile, Columbus, and Claude J. Bartlett, Columbus, for defendant-appellee.

## OPINION

By GEIGER, J.

This case is before this Court on appeal on questions of law. In the court below many pleadings were filed to which motions were addressed resulting in decisions by three separate Judges. The case was finally tried upon the amended petition and the third amended answer.

For a cause of action the plaintiff states that on May 1, 1933, it entered into a written contract with the defendant by the terms of which plaintiff granted defendant a non-exclusive license to make, use and sell certain patented articles relating to pulverizing apparatus, covered by fifteen separate patents, the last of which was granted January 12, 1932. It is alleged that it was agreed that defendant would pay plaintiff a royalty for each pulverizer made and sold or made and used by the defendant after the date of the contract, in accordance with stated formula by which the royalty for each device was to be determined.

The petition states that it was further agreed in said contract that if for the period ending December 31, 1933, the accrued royalties shall not amount to $300.00 defendant shall pay on the first of January, 1934, the difference between said sum of $300.00 and the accrued royalties; that if for any subsequent year during the life of the contract the accrued royalties shall not amount to $1000.00 the defendant shall pay plaintiff on January 1st of the ensuing year the difference between said sum of $1000.00 and the accrued royalties.

It is alleged that there is due plaintiff from the defendant the sum of $2300.00 for the period ending January 1st, 1936, for which judgment is prayed.

In the third amended answer to the amended petition the defendant admits certain allegations, among them being that the defendant entered into a written license with the plaintiff; that by the terms of the instrument the plaintiff granted a non-exclusive license and that it was agreed in certain events the defendant would pay plaintiff a royalty for each pulverizer made and sold or made and used by defendant after the date of the license in accordance with the formula stated.

The defendant denies that any license granted to it by the plaintiff contained the remaining terms alleged by the said amended petition not expressly admitted and de-

fendant denies all other allegations and prays to be dismissed. Allegations of fraud and a counter claim asserted in the first three answers were abandoned in the third amended answer.

A jury was waived and the cause submitted to the court on the pleadings and evidence and the motion of defendant at the close of the evidence, for judgment. The court found for the defendant and that said defendant's motion should be sustained, and ordered that said motion be granted and judgment entered in favor of defendant. Motions by plaintiff for a new trial and for judgment in its favor notwithstanding the verdict, were overruled. The appeal of the plaintiff was from this judgment.

Although the preliminary pleadings were voluminous, when the issues were finally reduced to those made by the amended petition and the third amended answer, the testimony was brief, as appears by the bill of exceptions. The plaintiff introduced the contract which the evidence showed was executed on the first of May by the plaintiff, and then sent in duplicate to the Jeffrey Manufacturing Company and signed by it on May 7th, 1933, said company retaining one copy of the agreement and returning the other copy to the plaintiff. A report made by the Jeffrey Manufacturing Company was introduced as Exhibit B. It was dated July 7, 1933, and stated, "For the period ending June 30th, there are no commissions due on license agreement dated May 1, 1931",—the '31 being a typographical error, the true date being 1933. No other reports were received and no payments made. After that the plaintiff rested without cross-examination of the witness and thereupon the defendant rested without introducing testimony and motion was made that the amended petition be dismissed and that the court enter judgment for defendant which motion was sustained as per the entry of September 12, 1938, hereinbefore noted. A motion for a new trial was made and overruled and a second motion for new trial made, which was overruled.

The sole question for the court to determine is: Whether the contract, and particularly paragraph 4 thereof, provides for payment of minimum royalties in the amount specified therein, and whether the liability of the defendant for these royalties is absolute and not conditioned upon the manufacture, sale or use of any pulverizers. It becomes necessary for us to examine minutely this contract, and in order that this may be done we will set it out in considerable detail, emphasizing those words or phrases which we deem of importance and to which attention may hereafter be drawn. Where not necessary, the provisions of the contract will be paraphrased.

### THE CONTRACT

The agreement made on the first of May, 1933, between the parties, Witnesses that, Whereas, the licensor is the owner of certain letters patent granted at different dates on pulverizing machines and apparatus, and "whereas the licensee is desirous of making, using and selling pulverizing apparatus embodying the invention of said patents", the parties agree,

(1) Licensor grants to licensee a nonexclusive license under said patents to make, use and sell throughout the United States pulverizers embodying the invention of said patents for the full term of said patents, the licensee being restricted to a certain size.

Licensee agrees not to make or sell replacement parts of a certain kind.

(2) Licensee agrees to pay a royalty for each pulverizer made, sold or made and used by licensee after the date of the agreement in accordance with a certain formula from which the price is to be determined. Licensee agrees to pay a royalty of 10% of the net selling price of all replacement parts covered by two of the patents and made and sold by licensee.

(3) "Licensee agrees to submit to licensor within thirty days after the expiration of each quarter beginning January 1st, April 1st, July 1st, and October 1st, of each year during the life of this agreement a sworn statement in writing giving a list of pulverizers and patented replacement parts sold or installed during the preceding quarter," and at the same time agrees to pay the royalty due on the pulverizers and replacement parts covered by such statement. "If for any quarter, no pulverizers or replacement parts have been sold or installed, a report so stating shall be made.

(4) "If for the period ending December 31, 1933, the accrued royalties shall not amount to $300.00 licensee shall pay to licensor the difference, when submitting a statement due in January, 1934. If for any subsequent year during the life of this agreement, the accrued royalties shall not amount to $1000.00, the licensee shall pay to licensor the difference when submitting the statement due in January of the ensuing year."

(5) On failure of the licensee to account for and pay any royalty due, licensor may

cancel agreement on thirty days notice, provided that licensee does not within thirty days repair or remedy such failure. Cancellation of this agreement shall not affect the right of licensor to collect **royalties** which have already **accrued.**

(6) Licensee agrees to keep books with reference to the **"manufacture, sale, billing and shipment of all pulverizers and replacement parts, the subject of this agreement."**

(7) Licensor shall have the right to purchase of licensee pulverizers of the type covered at a discount from the lowest net price allowed any dealer who buys for resale, the pulverizers so purchased by licensor to be free from **royalties.**

(8) Licensee agrees to furnish licensor with complete assembled drawings of various pulverizers **manufactured** under this license. These drawings to show fully the construction being employed.

(9) The licensor agrees to furnish licensee upon request with the services of an engineer skilled in the art of pulverizing, designing and construction.

(10) "It is also understood and agreed that in the event of dispute between the parties hereto as to the **meaning, effect or operation of this agreement,** the parties hereto will, upon the request in writing of one party, promptly submit the question in dispute to arbitration by a disinterested person or persons and will abide by the result of such arbitration."

Exhibit B is short and is embodied in a letter to the Riley Stoker Corporation, Worcester, Mass., is dated July 5, 1933, and states, "For the period ending June 30th there are no commissions due on license agreement dated May 1, 1931."

This is all the evidence submitted by either side.

It will be noted that under the provision of Section 10 it is agreed that in the event of a dispute between the parties as to the meaning, effect or operation of this agreement the parties will, **upon the request in writing of one party,** promptly submit the question in dispute to arbitration. We believe that this provision falls within §12148-1 GC, which provides in substance that a provision in any written contract to settle by arbitration a controversy arising out of the contract shall be valid, irrevocable and enforceable.

Sec. 12148-2, GC, provides that if any suit be brought upon any issue referable to arbitration under the agreement, the court in which the same is pending, upon being satisfied that the issue involved is referable to arbitration under such agreement, shall on application of one of the parties stay the trial until such arbitration has been had in accordance with the agreement. The matter in controversy between the parties related to the meaning, effect or operation of this agreement, and under the provision of arbitration and the statute could have been submitted to arbitration either before or after this action was brought.

However, the arbitration agreement provides that the question will be so submitted **"upon the request in writing of one party",** or after suit is brought "on application of one of the parties". We find no such request in writing nor do we find any reference made to the arbitration clause in the pleadings, and there is no reference to it in the briefs of either side. We therefore assume that inasmuch as neither party made any request in writing or application after suit to submit the question to arbitration, that the arbitration provision of the contract and the statutory provisions were not invoked.

## COURT BELOW

The Court below in his opinion, dated July 22, 1938, arrived at the conclusion that the terms and words used in the contract disclosed that it was the intention of the parties that defendant act under said contract and produce and sell pulverizers and that if so acting under said contract the accrued royalties owing by licensee to licensor did not amount to the specified sums at the specified periods as shown by the sworn statements of licensee, then the licensee should pay to the licensor the difference provided for; "that a difference was intended in the use of the words 'sworn statement in writing' and the word 'report' and that the terms and words used do not disclose an intention that the licensee should pay to the licensor a minimum royalty as such and in any event and without regard to whether or not the licensee acted under the terms of the contract in the manufacture and sale of pulverizers and parts."

The court also states that it was mindful of the fact that the contract was drawn by the licensor and should therefore be strictly construed against it, and that had the licensor intended that a minimum royalty should be paid in any event licensor could and should have used terms clearly showing this intention. The Court concludes that the terms and words used disclose the intention that the difference provided for

should be paid only when and if **statements** become due at the times provided for by virtue of the sale of the pulverizers during that period.

We find no assignment of errors on behalf of the appellant among the papers, but the brief filed discloses the errors complained of.

We will first examine the grounds upon which the court arrived at his conclusion. These grounds not only form the basis of the Court's conclusion, but their discussion forms a large portion of the appellee's brief. In substance, as we understand it, the defendant bases his argument largely upon the claimed difference between the word "statement" and the word "report". It is asserted that a statement is to be made only in the event that there has been a manufacture of some of the articles, and that if no article was manufactured no statement need be made, but that in lieu thereof a report should be filed, (one such report being disclosed by Exhibit B to the effect that for the period ending June 30th there are no commissions due on the license agreement). It is pointed out by appellee that paragraph 3 in the contract provides that the licensee agrees to submit at certain periods during the life of the agreement a sworn statement giving a list of the pulverizers sold during the preceding quarter, and at the same time agrees to pay the royalty due on the pulverizers covered by such statement. If for any quarter no pulverizers have been sold a **report** shall be made. It is claimed that the obligation to pay depends upon the obligation to file a **statement** and therefore if no pulverizers have been sold for any quarter a report only shall be made and that no obligation to pay arises from the filing of a report. It occurs to us that this position unduly magnifies the importance of the alleged difference between the word "statement" and the word "report". If the licensee manufactured any of the articles he was under obligation to pay therefor the stipulated royalty and the mere fact that for any one quarter it did not manufacture any of the articles and therefore made a "report", furnished no ground for the refusal to pay for those articles that were manufactured, or to pay the stipulated annual minimum required by the contract. The plain meaning of the contract was that quarterly the licensee should make a statement of manufactured articles and the royalties due thereon, but if for any one quarter no article was to be manufactured, then it was not necessary to make the statement. If at the end of the year royalties due and paid or due did not

amount to the stipulated minimum, then the licensee was liable to pay the royalty and in addition thereto an amount sufficient to make the entire payment equal to the minimum requirement of $300.00 for the balance of the first year in which the contract was signed under date of May 1st, and $1000.00 for the succeeding year. We are of the opinion that the important matter of paying what was due under this contract, whatever it may be, could not be made to depend upon this asserted distinction between the word "statement" and the word "report". The defendant's position in this respect might well result in the anomalous situation of releasing it from the obligation to pay a royalty for goods actually manufactured by reason of the fact that in a certain quarter no goods were manufactured and therefore no **statement** required.

Having thus indicated our inability to follow the reasoning of the court below or the brief of counsel on this matter, it becomes our duty to examine the contract under the rules so well known to all that they need not be stated. (See **Courtright v Scrimger, 110 Oh St, 947**.) For this purpose we direct attention to our quotations from the contract, especially relating to the words and phrases emphasized.

It will be observed in the first place that the licensee is desirous of **making, using and selling** the apparatus, and that the licensor grants a nonexclusive license to **make, use and sell.** The licensee agrees to pay a **royalty** for each pulverizer made, sold or made and used, in accordance with a certain formula from which a price is to be determined. It agrees on quarterly dates to make a statement giving a list of the pulverizers sold and at the same time to pay the royalty due as covered by the statement. If no pulverizers have been sold a report shall be made. Thus far we have covered the first three items of the contract and will pause here before approaching the critical No. 4.

It appears that the contract was made with the defendant, who was a manufacturer, for royalties based upon the number of patented articles it may make in any given period. A **royalty** is a payment reserved by the grantor of a patent and payable proportionately to the use made of such right. A **license** to use a patent estops the licensor from exercising his prohibitory powers in derogation of the privileges conferred by him upon the licensee. A license is the right not to be sued. Under this contract a royalty was provided for according to the number of articles made by the licensee. It was proper also to license

the party proposing to manufacture the patented article. The first three paragraphs are appropriate to the declared purpose of the parties. The licensee was granted the right to manufacture the patented article at a price fixed and was required to pay the royalties upon the making of a statement of the number of articles manufactured. So far the contract is clear and needs no interpretation.

By the 4th paragraph it is provided that if for the period ending December 31, 1933, the accrued royalties shall not amount to $300.00, licensee shall pay to licensor the difference when submitting a statement due in January, 1934, and that if for any subsequent year the accrued royalties shall not amount to $1000.00 the licensee shall pay to the licensor the difference when submitting a statement in January of the succeeding year.

In the case of American Delinting Co v Pomeraning, 274 Fed. 212, the Judge delivering the opinion of the court states at the top of page 213 in reference to a contract requiring the payment of a minimum amount,

"In contracts of this nature probably the most usual method of expressing the consideration flowing to the assignor is to provide for a 'royalty' of a certain amount per article on each article manufactured or sold, with a provision usually inserted for the protection of the assignor that such royalty shall equal at least a certain amount or that the assignee shall pay royalty on not less than a certain number of such articles, or that the assignee agrees to sell not less than a certain number of such articles, during a stated period. The effect in each case, in the absence of anything specifically to the contrary in the contract is the same, namely, to provide for a minimum liability on the part of the assignee and to protect the assignor. In such case the assignee is bound to pay at least the minimum royalty regardless of the actual number of articles sold."

We deem this a fair statement of the usual conditions under which it has been held that the licensee is required to pay a fixed minimum amount irrespective of the amount manufactured or sold, although the parties may vary these formula by contract.

Do the conditions set out in paragraph 4 fall within any of the provisions above stated? The licensee in this case does not agree to pay royalty on any number of articles and does not agree to make or sell any during the period stated. If its en-

gagement falls within any of the provisions it must be a provision for a royalty of a certain amount for each article manufactured or sold with a provision "that such royalty shall equal at least a certain amount". Is there a provision that the royalty shall equal a certain amount? The provision is that if the accrued royalties shall not amount to the sum stated for the respective period the licensee shall pay the difference.. Manifestly we must give the appropriate meaning to the word "accrued". The parties did not provide for a gross annual royalty, but kept in mind the initial provision of the contract, which was to the effect that the licensee desired to make, use and sell the apparatus, and that the licensor granted it a nonexclusive license to do so at a certain fixed price per item so manufactured. Paragraph 4 clearly contemplates that there must be accrued royalties for apparatus actually made within the period as a basis for ascertaining the difference between such a sum due as royalty and the gross sum mentioned for the particular period. It is provided that the licensee shall pay to the licensor the "difference". The use of the word "difference" both in reference to the $300.00 gross payment and the $1000.00 payment has a very definite meaning. The schedule of payment provided is a mathematical formula and the definition of the word "difference" as it relates to mathematics is,

"The quantity by which one quantity differs from another, or the remainder left after substracting one from the other."

The word clearly indicates that there must be two quantities, or in this case, two figures which will permit a remainder to be determined after subtracting one from the other. In the common use of the word "difference" as it relates to figures there is always a basis that there be two figures which will produce a difference when one is subtracted from the other. Very infrequently is it understood that one of the figures is a cipher, as would be the case if nothing was due as royalty because no machines were made. It is true that in speaking of temperature the figure given, whether plus or minus, is understood to relate to an arbitrary zero. But where two temperatures are compared, there are two figures, and the difference is ascertained by deducting one from the other. In speaking of a "difference" in time, two figures are always understood essential in ascertaining the difference.

Under paragraph 5 it is provided that on

failure of the licensee to pay any royalty due the licensor may cancel and that this cancellation shall not affect the right to collect royalties which have already accrued. Paragraph 6 seems to be a declaration by the parties as to what was, within their contemplation when the contract was made. It provides,

"Licensee agrees to keep books with reference to 'manufacture, sale, billing and shipment' of all pulverizer and replacement parts 'the subject of this agreement'."

To what does the term "the subject of this agreement" have reference? Definitely it has reference to manufacture, sale, billing and shipment of pulverizers, and has no reference to a minimum payment if no such manufacture, sale, billing or shipment actually takes place.

Paragraph 8 again refers to pulverizers "manufactured" under this license. Taking the contract by its four corners and examining the words and phrases used by the parties and considering the purposes to be accomplished we can arrive at no other conclusion than that paragraph 4, which relates to minimum gross payments, has no force unless there be some manufacturing of the patented articles, and that until the licensee is engaged in such manufacture the 4th paragraph has no effect to require a stated minimum payment. It is urged by the plaintiff that inasmuch as its right to cancellation depends upon the failure of the licensee to pay for royalties due, that it is deprived of a right to cancel even though the licensee may refuse to proceed. That may be true but we fail to see that it has any bearing upon the question as to the proper interpretation of paragraph 4. Inasmuch as it it a nonexclusive contract the fact that it may not be cancelled is of little consequence. However that may be it is so written in the contract and the parties must abide by their agreement.

It may be claimed that if our interpretation of this contract is correct it would lead to the ridiculous conclusion that if the licensee manufactured only one of the articles upon which a royalty was due that it would thereby become obligated to pay the balance of the gross sum for that particular period. When we consider the process of manufacture the conclusion is not as ridiculous as it may appear at first. The licensee in order to avail himself of his privilege to manufacture under the patent must equip himself with expensive machinery and establish a market through exploitation of the goods produced. If it has taken this step so that it may make the first article it may well be assured that it can make and sell enough of the articles to bring the total royalties reasonably close to the gross amount. Of course the manufacturer in entering into this contract probably contemplated that it could manufacture and sell a sufficient number of the devices to render the gross provisions of the 4th paragraph of little consequence. While the answer and amended answers are not before the court their allegations may be used as an example of what may happen under a contract such as this. Those discarded answers were to the effect that plaintiff practiced fraud in misrepresenting the efficiency and salability of the articles covered by the contract, and that the defendant in endeavoring to produce the article in actual manufacture had expended and lost about $27,000.00, which it sought to recover from the plaintiff on a cross-petition. This of course is not pertinent to the issues as tried but simply is illustrative of the fact that it costs money to put articles into production and that when the preliminary expenses have been incurred a matter of fixed gross liability is of small consequence.

We have been much interested in this controversy and have studied the briefs of counsel with care and have read many of the cases referred to, among which we cite as those most nearly paralleling the case at bar, the following: Meyer v Brenzinger, 22 Misc. Rep., 712, 49 N. Y. Supp., 1091; American Delinting Company v Pomeraning, 274 Fed. 212; Beauman v Kittle Mfg. Co., 10 Pac. (2d Series) 508, (Cal.); Preston v Smith, (Ill.), 40 N. E. 949; Elliott v Barrett, (N. Y.) 25 Fed. (2d.) 125. These cases are quite near the mark in the case at bar, and if it be found that this court is wrong in its conclusion it will be because of the principles announced in the above cases. See also **Motor Parts Co v Packard Co, 124 Oh St, 363.**

The evidence shows that this contract was prepared by the licensor, and submitted to and accepted by the licensee. (See bill of exceptions.) At least this is a legitimate inference. If it were not so, the witness of the licensor could have so stated but did not. This brings the contract within the rule that in case of ambiguity, it shall be strictly construed against the party drafting it.

While we proceed by a different route from that followed by the court below we arrive at the same conclusion, to the effect that unless the licensee has produced under this contract a manufactured article

upon which a royalty is due, the plaintiff can not recover under the provision of paragraph 4 providing for gross payment.

Judgment of the court below affirmed.

HORNBECK, PJ, and BARNES, J, concur.